# Richmond

MAX ROSENBERG, ET ALS. V. S. J. STONE.

March 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*T. W. Messick,* for the plaintiffs in error.

*Woods, Chitwood, Coxe & Rogers* and *Willis & Hunter,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The plaintiff, S. J. Stone, instituted an action by a notice of motion against Max Rosenberg and others, partners trading as Rosenberg Brothers, to recover damages for the wrongful levy of an attachment of 798 suits of clothes and 100 overcoats. Upon the trial a verdict and judgment for $4,490 was rendered in favor of the plaintiff.

The notice of motion alleged, and evidence for plaintiff tends to establish, that S. J. Stone, who lived in Canton, Ohio, operated a chain of retail clothing stores. Some time in 1930 he purchased the entire stock of clothing owned by Manley's Clothes Shop, which was then conducting a retail clothing store in Roanoke in a building owned by Rosenberg Brothers. Stone continued to operate the retail store on the premises formerly occupied by Manley's Clothes Shop until December 29, 1930, when an attachment, for rent not yet accrued, was sued out in the Hustings Court of the city of Roanoke by the defendants, Rosenberg Brothers, against Sigman Regenstreid and Leon Goldman, trading as Manley's Clothes Shop. The affidavit stated that the defendants "intended to remove their effects from the leased premises otherwise than in the usual course of trade." In the original petition, Stone was not named a party.

The attachment was duly issued and levied upon fourteen cases containing the clothing here in question, which had

been packed for shipment to Wolk Clothing Company, of Chicago, to whom Stone had agreed to sell the merchandise for $11.00 per suit and $10.50, each, for the overcoats, with the understanding that bill of lading for the clothes would be delivered not later than December 30th. On December 29th Stone was in Canton, Ohio, but was at once notified of the levy and immediately returned to Roanoke. Upon his arrival he notified Rosenberg Brothers, as his manager had done prior thereto, that the clothing belonged to him and not to the defendants in the attachment proceedings, and demanded its release from levy.

Upon the refusal of Rosenberg Brothers to release the property, Stone, on January 5, 1931, filed his affidavit of substantial defense and petition in the attachment proceedings, alleging that he was owner of the property levied on. Shortly thereafter Rosenberg Brothers were notified that unless they gave bond, as required by Code, section 6385, the attachment would be dismissed.

Subsequently Rosenberg Brothers, on different dates, filed two amendments to the petition and caused two other attachments to be issued and levied on the same merchandise. In these amendments Stone was named one of the defendants. Upon the trial of the attachments, on February 10th, the jury returned a verdict in favor of Stone. The next day, under an agreement in which neither of the parties waived any right, the merchandise was delivered to Stone. On April 11th the hustings court overruled the motion of Rosenberg Brothers to set aside the verdict and entered final judgment thereon.

The notice also alleged, and the evidence tends to prove, that, because the merchandise was under levy, Stone was unable to make delivery in accordance with his contract of sale and the Wolk Clothing Company cancelled the contract. After the merchandise was released, the same company offered to buy the clothes at a reduction from the original contract price of $5.00 per suit and overcoat. This offer was accepted and the merchandise delivered. The measure

of damages claimed is the difference between the original contract price and the amount paid for the goods in February, 1931.

The first error assigned is to the action of the court in rejecting defendants' special plea, and its refusal to treat the same as a statement of one ground of defense.

The substance of this plea is that, notwithstanding the wrongful levy of the attachment on Stone's property, it was his duty to have minimized damages in one of two ways: (1) To have given bond in the attachment proceedings and secured possession of the property; or (2) to have made application to the court to have the merchandise released from the levy and delivered to the purchaser and the purchase money paid into court, subject to final judgment on the attachment.

To sustain this contention, the defendants rely upon the case of *Moses & Sons* v. *Lockwood,* 54 App. D. C. 115, 295 Fed. 936, 33 A. L. R. 1467, and other cases from North Carolina, Georgia, Kansas, Kentucky and Pennsylvania cited in the A. L. R. annotation to the above case. It was held by the majority opinion in that case that it is the duty of one whose property is wrongfully attached, in order to reduce damages, to give bond and secure the return of the property levied on.

This rule would seem to require the injured party to take *every possible precaution* for the benefit of the wrongdoer. Such is not the rule generally applied. The hardship this would impose upon injured parties is pointed out in an able dissenting opinion in the Lockwood case, and the annotator in the A. L. R. series, after reviewing the cases in accord with that case, approved the views expressed in the dissenting opinion. As we understand the doctrine of avoidable consequences, as generally applied, it only requires the injured party to use ordinary efforts and reasonable expenditure to minimize consequential damages. The duty to minimize consequential damages resulting from a wrongful act is not arbitrarily imposed in all cases, but

only when it is a reasonable duty and can be performed at trifling expense and with reasonable exertion. See *McHenry* v. *Parkersburg*, 66 W. Va. 533, 66 S. E. 750, 29 L. R. A. (N. S.) 860; *N. & W. Ry. Co.* v. *Allen*, 122 Va. 603, 95 S. E. 406; *C. & O. Ry. Co.* v. *Arrington*, 126 Va. 194, 101 S. E. 415; *Crowder* v. *Virginian Bank of Commerce*, 127 Va. 299, 103 S. E. 578; *Stonega Coal Co.* v. *Addington*, 112 Va. 807, 73 S. E. 257, 37 L. R. A. (N. S.) 969; *Clinchfield Coal Corporation* v. *Hayter*, 130 Va. 711, 108 S. E. 854.

■ Rosenberg Brothers were the wrong-doers, not Stone. They were given full notice that the property attached belonged to him, who was not responsible for any rent which might accrue. Notwithstanding Stone's protests, they repeatedly took active steps to hold the property. Under the circumstances, there was no duty upon Stone to take any further steps to diminish the consequences of their continued wrongful acts. The trial court was plainly right in rejecting the defense and all evidence offered to support it.

■ Another assignment of error is that the court refused to permit the defendants to introduce evidence tending to prove that Stone "did not notify the defendants of his alleged contemplated sale to the Wolk Company."

The rationale of this assignment is that if Stone had explained to Rosenberg Brothers that he had a contract for the sale of these goods, they would have been willing to make some sort of an arrangement by which he could have carried out the sale. The defendants knew he held these goods for the purpose of making sale of them, and their own allegations show that they had knowledge of facts which should have put them on notice that he had sold, or was preparing to sell, them in bulk. In view of these facts, Stone owed to them no legal duty to tell them that he had contracted for the sale of these goods.

■■ The next assignment of error is to the action of the court in admitting any evidence of the two sales of the merchandise to the Wolk Company, *i. e.*, the agreement to

sell made between plaintiff and the Wolk Company in December, 1930, and the sale actually consummated in February, 1931.

The defendants contend that this evidence was inadmissible for two reasons: (1) That the measure of the plaintiff's damages was not the difference in price between the two sales, but was the difference between the original contract price and the market value at the time of release of the levy, and that the damages "claimed were not the natural and proximate result of the wrongful attachment, and in the absence of any allegation and proof of fraud, malice, oppression and other special aggregating circumstances could not be recovered."

The loss due to a decline in the market value of the goods while they were held under the levy was the natural and proximate result of the wrongful attachment and levy which prevented the delivery of them during that period. The difference between the price at which Stone had contracted to sell the goods and the price for which he finally sold them does not necessarily constitute the measure of his damages, but the evidence with reference to both the original contract and the final sale was admissible in evidence. The contract of sale fixed the maximum value which Stone could claim for these goods at the time of the levy, and under the testimony for plaintiff detailed in the record and in the absence of any evidence to the contrary, was sufficient to establish their market value at the time they were levied upon. The price received in the final sale fixed the minimum which Stone could claim to have been the market value of the goods at the time the attachment was released, and, under the facts, was also of evidential value upon the question of their market value at that time. There is no merit in this assignment.

Another error assigned is the action of the court in excluding from the consideration of the jury evidence, offered by defendants, tending to establish that the decline in the market value of the merchandise was not as much

as that claimed by plaintiff. One of the witnesses offered was J. B. Morgan, who testified, out of the presence of the jury, that he had been in the clothing business in Roanoke for eighteen years; that he was buyer for the Brotherhood Mercantile Company; that he was acquainted with the class of merchandise handled by plaintiff in Roanoke city, and that, in his opinion, the decline in price between December 29th and February 11th was not over $1.00 or $1.25 per garment. He also gave testimony concerning marked down sales, or what he termed "disposal sales," for the purpose of reducing the stock to be carried over from one season to another. On cross-examination he was asked if he did not confine his testimony in this regard to sales at retail, to which he replied "yes." He further testified that the wholesale price of merchandise had been reduced fifteen per cent within the year. While much of this testimony, particularly that on cross-examination, dealt with retail values, it is clear from his evidence that he was familiar with both the wholesale and retail market value of this class of merchandise, and this evidence should have been admitted. As a result of this ruling the only evidence as to the value of the merchandise which the jury was permitted to consider was that of plaintiff and W. W. Wolk, a member of the firm of Wolk Clothing Company.

The case seems to have been presented to, and tried by, the court below on the erroneous theory that the measure of the plaintiff's damages was the difference between the original contract price and the price at which he actually sold the merchandise.

The court, at plaintiff's request and over defendants' objection, gave this instruction:

"The court instructs the jury that the judgment of the Hustings Court of the city of Roanoke, Virginia, in the attachment proceedings instituted by Max Rosenberg, Sol Rosenberg, Lake Rosenberg, Harry Rosenberg and Ruby Rosenberg, is binding evidence before this jury that the attachment levied on the goods of S. J. Stone was wrong-

fully sued out; and if you believe from the evidence that by reason of the said attachment being levied upon the goods of said S. J. Stone, the said S. J. Stone was injured, you should find for the said S. J. Stone such damages as will compensate him for any loss sustained."

The objection to this instruction was that it failed to instruct the jury on the correct measure of damages. That part of the instruction stating the measure of damages is very similar to the suggestion made by this court in *Gurfein* v. *Howell*, 142 Va. 197, 205, 128 S. E. 644, 646, in which case the action was for illegally suing out a distress warrant and levying the same on property for rent not due. The damage there claimed was for injury "to the *good name, fame and credit*" of the plaintiff. The case was reversed because the instruction told the jury that in the event they believed the distress warrant was illegally levied "they should find for the plaintiff *fair damages* for the wrong suffered." (Italics supplied.) Judge Campbell, speaking for the court, said:

"The instruction should have concluded with a direction to the jury to find for the plaintiff 'such damages as will *compensate* her for the *injury* suffered.'

"It is more than probable that 'fair' means more than 'compensation' to the average individual, and when the jury were told to find *'fair damages' for the wrong suffered,* instead of being told they could only compensate for the injury done, they conceived the idea, no doubt, that they had the right to punish instead of the power to compensate."

A good reputation is a most valuable asset, but one which is incapable of being measured in terms of dollars and cents, —in other words, such an asset has no marketable value. The court emphasized the fact that they should have been told that in assessing damages they were confined to the idea of compensation.

In the case at bar, recovery for the wrong suffered is likewise confined to compensatory damages, but this loss is capable of being measured with reasonable accuracy.

There is nothing peculiar about the property upon which the levy was made; it was an ordinary article of merchandise, the market value of which is susceptible of definite proof by merchants accustomed to buying and selling the same class of goods. The seller and the buyer testified that the price at which the goods were sold was fair. The defendants offered to prove that the price at which they were sold was unfair, or not the market value. This evidence was rejected. In view of the evidence admitted, the evidence rejected, and the instruction given, the jury could have reached no other verdict. The defendants had a right to introduce evidence tending to show that the market value of the merchandise had not diminished $5.00 per garment within forty-three days. The jury should have been instructed that if after considering all the evidence they believed the plaintiff was entitled to recover, his measure of damages was the difference between the original contract price and the market value of the merchandise on the day it was released from levy.

For the reasons stated, the case is reversed and remanded for a new trial not in conflict with the views herein expressed.

*Reversed and remanded.*