932 F.2d 963
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re FAIRFAX WEST APARTMENT OWNERS ASSOCIATION, INC., Debtor.
Brian R. SEEBER, Trustee of Private Mortgage Investors Trade
Association, Inc., Plaintiff-Appellant,
v.
FAIRFAX WEST APARTMENT OWNERS ASSOCIATION, INC., Defendant-Appellee.
In re FAIRFAX WEST APARTMENT OWNERS ASSOCIATION, INC., Debtor.
Brian R. SEEBER, Trustee of Private Mortgage Investors Trade
Association, Inc., Plaintiff-Appellee,
v.
FAIRFAX WEST APARTMENT OWNERS ASSOCIATION, INC., Defendant-Appellant.
 Nos. 89-3319, 89-3320.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1990.
Decided May 14, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-425-A)
 Brian R. Seeber, Washington, D.C. (Argued), for appellant; John E. Drury, Drury & Brennan, Washington, D.C., on brief.
 John Howson Rust, Jr., Rust, Rust & Silver, Fairfax, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Brian R. Seeber, the trustee in bankruptcy for Private Mortgage Investors Trade Association, Inc. (PMITA), appeals from the district court's award of $318,165.96 plus adversary proceeding costs to the Fairfax West Apartment Owners Association (Fairfax West). Fairfax West cross-appeals, seeking to increase the damages the district court awarded. Finding no error of fact or law, we affirm the district court's judgment.
 
 
 2
 * A.V. Laurins developed the Fairfax West Apartments consisting of 72 units organized as a cooperative. National Mortgage Corporation, a Laurins company, held title and the residents occupied their apartments under long-term leases. National Mortgage encumbered the property in 1971 by a deed of trust securing a note in the amount of $600,000 payable to Home Beneficial Life Insurance Company in 240 monthly installments with a balloon payment of $229,934.85 due November 11, 1991.
 
 
 3
 In 1973 National Mortgage conveyed the property to Fairfax West Apartment Owners Association, a nonstock corporation. As consideration for the conveyance, Laurins, acting on behalf of Fairfax West, executed a note in the amount of $1,127,520 payable to A.V. Laurins & Co., Inc., in monthly installments. This note was secured by a second deed of trust. The note and trust were drafted to "wrap around" the Home Beneficial note and trust.
 
 
 4
 Fairfax West did not assume the Home Beneficial indebtedness. Instead, the Laurins trust required the Laurins note holder to make all payments to Home Beneficial from Fairfax West's monthly installments on the Laurins note. Laurins directed Fairfax West to make payments to Metropolitan Service Group, another Laurins company.
 
 
 5
 Fairfax West regularly made the required payments to Metropolitan, which passed them on to PMITA, another Laurins company that had become the Laurins note holder. PMITA, however, ceased making payments to Home Beneficial on September 1, 1986. Fairfax West was unaware of the omitted payments until November 1986 when Home Beneficial declared a default and demanded payment of the outstanding balance of $390,717.58 due on the note it held. Home Beneficial refused Fairfax West's offer to make the note current, but it agreed to defer foreclosure to permit Fairfax West to secure refinancing. PMITA meanwhile had filed a petition in bankruptcy.
 
 
 6
 Fairfax West's cooperative arrangement did not conform to the Virginia Cooperative Act, which was passed after Fairfax West was organized. For that reason, the apartments were not acceptable collateral for bank loans, and Fairfax West was unable to refinance the balance due on the Home Beneficial note.
 
 
 7
 Caught between PMITA's failure to discharge the duty imposed on it by the Laurins trust and Home Beneficial's insistence on the rights secured to it by its trust, Fairfax West filed a Chapter 11 petition in bankruptcy. It was apparent that to obtain refinancing Fairfax West would have to convert to condominiums and rehabilitate the property. The bankruptcy court found:
 
 
 8
 [New financing is] necessary for an effective reorganization; and that if financing is not restructured and the Project not renovated and converted, Fairfax West will have no alternative but to sell the Project which will cause the members to lose their equity investment and occupancy rights....
 
 
 9
 The bankruptcy court authorized Fairfax West to borrow two and a half million dollars for construction and rehabilitation and to borrow permanent financing in the amount of three and a half million dollars. The bankruptcy court also authorized subordinating the Home Beneficial trust and the Laurins trust to the lien securing the new financing. PMITA consented to the subordination of the Laurins trust. In due course, Fairfax West paid the Home Beneficial note.
 
 
 10
 Fairfax West then filed its complaint in an adversary proceeding to determine the amount owed to PMITA as the Laurins note holder and to assert a counterclaim for damages PMITA caused by its default. Fairfax West claimed all of its expenses directly attributed to PMITA's default on the Home Beneficial note. PMITA does not question its liability for these damages.
 
 
 11
 Fairfax West also claimed all of its expenses to obtain refinancing except labor and materials for rehabilitating the project and the principal of the refinancing loans. Fairfax West's claim included the fees of its lawyers and other experts, loan fees, closing costs, printing, and other incidental nonconstruction expenses incurred to rehabilitate the apartments and convert them to condominiums. For convenience we will refer to all of these expenses as conversion costs. PMITA contends that it was not responsible for any of the conversion costs.
 
 
 12
 The bankruptcy court awarded Fairfax West damages of $318,165.96, holding that they arose "as a proximate and foreseeable result" of PMITA's default on the Home Beneficial note. This amount included the costs directly attributed to the default and one-half of the conversion costs. After deducting its award to Fairfax West from the balance due on the Laurins note, the court allowed PMITA's claim on the note. The district court affirmed the bankruptcy court's final order. On appeal, PMITA assigns error to the imposition of one-half of the conversion costs, and Fairfax West assigns error to the failure to award it all of the conversion costs.
 
 II
 
 13
 PMITA contends that Fairfax West should have mitigated damages by proposing a plan of reorganization that would "cram down" the Home Beneficial loan pursuant to 11 U.S.C. Sec. 1129(b)(1).
 
 
 14
 Section 1129(b)(1) does not require Fairfax West to propose a cram down. Fairfax West's duty to mitigate the damages flowing from PMITA's default is determined by nonbankruptcy law. Virginia law, which the parties agree is applicable, follows generally recognized principles. The injured party does not have to take "every possible precaution for the benefit of the wrongdoer." The injured person satisfies the duty to mitigate and the doctrine of avoidable consequence if he "use[s] ordinary efforts and reasonable expenditure to minimize consequential damages." Rosenberg v. Stone, 160 Va. 381, 386, 168 S.E. 436, 437 (1933).
 
 
 15
 The evidence supports the finding that Fairfax West acted reasonably in electing to obtain new financing rather than seeking a cram down. Without objection from PMITA, the district court found renovation and conversion were necessary to secure refinancing. PMITA did not propose a cram down until long after it consented to subordination of the Laurins trust. The new financing had been obtained and renovation was under way when PMITA belatedly raised the issue of cram down. PMITA's silence did not estop it, but the absence of a timely objection is relevant to the question whether Fairfax West acted reasonably.
 
 
 16
 Laurins, acting for Fairfax West, originally created the Laurins trust and later the Laurins note holder and Fairfax West amended that trust. Provisions in both those trust documents disclose that all parties realized that in event of a default, conversion of the ill-suited cooperative organization to a condominium would be essential to obtain refinancing.
 
 
 17
 Fairfax West also protests that a cram down within the framework of the wrap around trust securing the Laurins note would have left it untenably dependent on what it perceived as a bankrupt, corrupt Laurins company. It was reasonable for Fairfax West to consider this concern in deciding how best to deal with the problems caused by the default.
 
 
 18
 PMITA's suggestion for a cram down would require Home Beneficial to accept an "extension of the defaulted note through deferred payments of a present value of the note equal to its allowed security claim." But PMITA has not furnished a detailed plan or schedule for its proposed cram down and its costs. Depending on Home Beneficial's reaction to a cram down, which PMITA did not explore, litigation costs could have been extensive. Whether the cram down would have been significantly less expensive, taking into consideration additional interest, fees, and incidental expenses, is a matter of speculation.
 
 
 19
 The bankruptcy court's ruling, affirmed by the district court, that the conversion, rehabilitation, and new financing were reasonable to remedy PMITA's default is neither clearly erroneous nor an abuse of discretion.
 
 III
 
 20
 PMITA contends that its relationship with Fairfax West was contractual and that Fairfax West can recover only direct, not consequential, damages. It points out that the 1975 amendment to the Laurins trust specifies that if the Laurins note holder defaults, Fairfax West would have the right to advance funds "to cure such default" and credit the advance with 8% interest against the next installment due on the Laurins note. This provision, PMITA argues, limits Fairfax West's damages.
 
 
 21
 The difficulty with PMITA's argument is its failure to recognize that PMITA made it impossible for Fairfax West to cure the default. PMITA never notified Fairfax West that it was omitting payment on the Home Beneficial note. Not until Fairfax West received a notice of acceleration and foreclosure did it learn of PMITA's default. By then it was too late; Home Beneficial had declared a default and refused to permit Fairfax West to cure it. Fairfax West's effort to mitigate damages by curing the default was unsuccessful through no fault of its own.
 
 
 22
 The bankruptcy court held that Fairfax West's entitlement to damages included the conversion costs because this element of damage was a "proximate and foreseeable result of [PMITA's] default." Two closely related reasons sustain the bankruptcy court's conclusion.
 
 
 23
 Virginia law allows consequential damages for breach of contract if special circumstances were contemplated by both of the parties. "In this context 'contemplation' includes what was actually foreseen and what was reasonably foreseeable." Roanoke Hospital Ass'n v. Doyle & Russell, Inc., 215 Va. 796, 801 n. 4, 214 S.E.2d 155, 160 n. 4 (1975). Paragraphs 1 and 2 of the Laurins trust and the 1975 amendment show the parties contemplated that conversion to condominium status was reasonably foreseeable in the event of refinancing.
 
 
 24
 The second ground for sustaining the award of damages is the breach of PMITA's fiduciary duty it undertook as an essential part of the wrap around Laurins trust. This obligation required PMITA, the Laurins note holder, to pay the Home Beneficiary note from the money it received from Fairfax West. Virginia law imposes a fiduciary duty on one "who has been entrusted with money to use for a specific purpose." Hamby v. St. Paul Mercury Indemnity Corp., 217 F.2d 78, 80 (4th Cir.1954). Breach of a fiduciary duty is a tort, and the tortfeasor is liable for all damages proximately caused by the breach. See Washington & O.D. Ry. v. Westinghouse Electric Mfg. Co., 120 Va. 620, 628, 89 S.E. 131, 133 (1917).
 
 
 25
 In sum, PMITA's default made refinancing a reasonable remedy to preserve the equity and occupancy rights of the members of Fairfax West. Refinancing was impossible to obtain without rehabilitating the apartments and converting them to condominiums. The expense to accomplish this was reasonably foreseeable and was proximately caused by PMITA's default. We conclude that the district court did not err in holding PMITA partially responsible for these expenses.
 
 IV
 
 26
 In its cross-appeal, Fairfax West contends the district court erred by not awarding it all of the conversion costs, which it claims are $746,513.14. Alternatively, Fairfax West claims it is entitled to the diminution of the net equity value of the property, which it calculates at $416,127.91.
 
 
 27
 The facts justify the district court's refusal to award all conversion costs to Fairfax West. The bankruptcy court found that the members of Fairfax West gained some advantage from the conversion. Rehabilitation and conversion to condominiums increased the value of the apartments and made them more readily saleable. In agreement with the district court, we conclude that the bankruptcy court's allocation of damages was not clearly erroneous.
 
 AFFIRMED
 
 28
 PHILLIPS, Circuit Judge, and HIRAM H. WARD, Senior District Judge, joined.