Present:  All the Justices

ALLSTATE INSURANCE COMPANY

v.  Record No. 992352

ATLANTA CASUALTY COMPANY

                                      OPINION BY
                            JUSTICE LAWRENCE L. KOONTZ, JR.
                                   June 9, 2000

NATIONWIDE MUTUAL INSURANCE COMPANY

v.  Record No. 992354

ATLANTA CASUALTY COMPANY, ET AL.


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     William F. Rutherford, Judge


     These appeals, which we have consolidated, involve a

dispute among three insurance companies concerning the potential

coverage of their respective motor vehicle liability and

uninsured/underinsured motorist insurance policies.  The

dispositive issue is whether, and to whom, ownership of a

particular automobile was transferred as the result of the owner

endorsing the certificate of title for that vehicle but leaving

the name of the transferee blank.[1]

---

[1]For this reason, it is unnecessary to relate in detail the
specific policy provisions of the insurance policies involved.
It is sufficient to simply note that these provisions are those
standard in the motor vehicle insurance industry.

BACKGROUND

The parties do not dispute the principal facts. Shannon Scarborough (Scarborough) was at one time the owner of a 1982 Buick Regal automobile (the Buick). The Buick had been purchased for her by Lawrence Ferrell (Ferrell's father), the father of her boyfriend Sean P. Ferrell (Ferrell). Scarborough was living in the Ferrell household at the time. Ferrell's father had the Buick titled in Scarborough's name. In December, 1996, Nationwide Mutual Insurance Company (Nationwide) issued a motor vehicle liability insurance policy to Scarborough on the Buick.

According to Ferrell's father, although the Buick was purchased for Scarborough to drive "back and forth to work," he intended "to give the car to both Shannon and to [his] son." The Buick was "available for both of them to drive," but was titled in Scarborough's name alone because his son's driving record would have resulted in a higher insurance rate for the vehicle had it been titled in his son's name. Ferrell and Scarborough each had a set of keys for the Buick, and Ferrell drove the Buick "pretty much" whenever he wanted.

In January 1997, Scarborough planned to move to Georgia to live with her father. Ferrell's father "told her we were going to sell [the Buick] and since it was in her name she'd have to sign the title." Scarborough thought that "[t]he car didn't

2

belong to me . . . and once [I'd] gone [to Georgia] I'd go ahead and sign the title over to [Ferrell's father]." While Ferrell's father "was out of town," Ferrell and Scarborough "got into an argument, and she signed [the certificate of title]" leaving it and the Buick with Ferrell and moved to her sister's house. Regarding the circumstances of Scarborough's signing the certificate of title, according to Ferrell "[s]he said that she was leaving and I asked her if she would sign the title over to me because a friend of mine, . . . wanted to buy the [Buick]."

Scarborough signed her name and entered the date on the certificate of title. However, she did not complete the assignment of title by filling in the name of the intended transferee in the space provided for that purpose on the certificate. Scarborough understood that she was not to receive any money from the transfer of ownership of the Buick.[2]

After Scarborough signed the certificate of title to the Buick and left the vehicle with him, Ferrell "[u]sed [the Buick] when [he] needed to" without "ask[ing] anybody's permission to drive the car." According to Ferrell, his father had a set of keys only to "move [the Buick] in our yard." Ferrell made

---

[2]Although the certificate of title was not produced as an exhibit at trial, it is undisputed that the space for entering the transferee's name remained blank at all times relevant to these appeals.

premium payments to Nationwide on Scarborough's insurance policy because "she didn't want me to get caught driving [the Buick] without insurance."  Ferrell also "purchased a city sticker, inspection sticker and paid the personal property tax and everything in February so that it would still be legal."

On March 28, 1997, Ferrell, while operating the Buick, was involved in an accident with a motor vehicle occupied by Steve Vitek and Martha Vitek, resulting in alleged personal injuries to the Viteks.  At that time, Ferrell was the named insured under a motor vehicle liability insurance policy issued to him by Atlanta Casualty Company (Atlanta Casualty) on his 1979 Plymouth Volare.  At that same time Allstate Insurance Company (Allstate) was the issuer of an automobile liability insurance policy, including uninsured/underinsured motorist coverage, on the Viteks' vehicle.  Martha Vitek filed a lawsuit against Ferrell, alleging that he negligently caused the accident and her injuries.  During the pendency of that lawsuit and in anticipation of a potential lawsuit by Steve Vitek, Atlanta Casualty filed a declaratory judgment suit against Ferrell, the Viteks, Nationwide, and Allstate.  Atlanta Casualty sought a declaration that it was not required to provide a defense to Ferrell or to provide coverage for any liability he might incur as a result of the accident.  Atlanta Casualty asserted that the Buick was owned by Scarborough at the time of the accident and

4

was not a qualified "non-owned vehicle or substitute vehicle within the confines of the declaration of [Ferrell's] policy" with Atlanta Casualty.

Thereafter, Nationwide filed its grounds of defense, denying that Scarborough was the owner of the Buick at the time of the accident. Allstate filed an "answer," asserting that it should be dismissed from the proceedings because the motion for declaratory judgment made no claim for relief against it.

Following a hearing at which evidence in accord with the above-recounted facts was received ore tenus by the chancellor, the parties presented their respective positions to the chancellor in oral argument supplemented by trial and letter briefs. In summary, Atlanta Casualty contended that the attempted transfer of ownership of the Buick by Scarborough had failed because no transferee's name was entered on the certificate of title. Thus, because the Buick was a non-owned vehicle regularly furnished for Ferrell's use, it was subject to an exclusion in his insurance policy with Atlanta Casualty, and primary coverage rested with Nationwide as the insurer of the Buick under Scarborough's policy. Nationwide contended that the transfer of ownership was effective and, thus, that the Buick was no longer owned by Scarborough, its named insured. Allstate maintained that regardless of whether the transfer of ownership had been effective, the Buick qualified as a "non-owned vehicle"

5

subject to coverage under Ferrell's policy with Atlanta Casualty.

By letter opinion dated May 7, 1999 and subsequently incorporated by reference in the final order, the chancellor ruled that "the Buick . . . was owned at the time [of the accident] by Shannon Scarborough.  She had failed to correctly and fully endorse the title certificate.  Scarborough's 'gift' of the car failed because of an unspecified donee." Accordingly, the chancellor ruled that Nationwide is responsible for defending and indemnifying Ferrell for any and all claims and lawsuits arising out of the March 28, 1997, motor vehicle accident involving Ferrell and the Viteks.  The chancellor further ruled that "the Atlanta [Casualty] policy has no coverage in this case since the car was owned by Scarborough and Ferrell was not using the Buick as a 'temporary substitute vehicle.' "

Prior to the entry of the final order, Allstate sought reconsideration by the chancellor of the issue whether coverage under Atlanta Casualty's policy was not also available. Allstate asserted that the ineffective attempt to transfer ownership of the Buick did not amount to permission by Scarborough for regular use of the vehicle by Ferrell and, thus, that his policy with Atlanta Casualty would afford coverage for his casual use of the Buick.

In a final order dated July 13, 1999, the chancellor denied Allstate's motion to reconsider and entered judgment for Atlanta Casualty in accord with the rulings of his May 7, 1999 letter opinion. We awarded appeals to both Nationwide and Allstate.

DISCUSSION

The focus on the determination of the ownership of the Buick by the parties here and in the trial court is for the obvious reason that "[t]here is no insurance separate and distinct from the ownership of the car." Nationwide Insurance Company v. Cole, 203 Va. 337, 341, 124 S.E.2d 203, 206 (1962) (citation omitted). Accordingly, in its appeal, Nationwide contends that the chancellor erred in ruling that Scarborough remained the owner of the Buick after she signed the certificate of title and surrendered possession and control of the vehicle. Allstate contends that regardless of whether the transfer of ownership was effective, Ferrell's use of the Buick was only casual and not expressly with the owner's permission and, thus, was not subject to the exclusion in his policy relied upon by Atlanta Casualty. As will become clear, we need address only the first of these two issues regarding the ownership of the Buick.

In order to complete the sale of a motor vehicle, it is essential that the owner deliver to the transferee a proper assignment of title. Thomas v. Mullin, 153 Va. 383, 391, 149

7

S.E.2d 494, 497 (1929). Code § 46.2-628 governs the manner in which a proper assignment of title is made and provides, in pertinent part, that "[t]he owner of a motor vehicle . . . when transferring or assigning his title . . . shall fully and correctly endorse the assignment and warranty of title on the certificate of title of the motor vehicle . . . to its purchaser . . . and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle."[3]

However, Code § 46.2-630 further provides that "[t]he transferee shall write his name and address in ink on the certificate of title and . . . shall within thirty days forward the certificate to the Department with an application for the registration of the motor vehicle . . . and for a certificate of title."[4] (Emphasis added.) Accordingly, it is the

_____

[3]Code § 46.2-629 also requires the owner to enter the vehicle's odometer reading on the certificate of title at the time of transfer. Failure by an owner to comply with Code § 46.2-629 can result in criminal liability and can prohibit the transferee from obtaining a new certificate of title. The certificate of title to the Buick was not produced as an exhibit at trial and the record is silent as to whether the odometer reading was recorded thereon. However, as the issue was not raised before the chancellor, we do not consider it on appeal. Rule 5:25.

[4]Code § 46.2-631 provides an express exception to the requirement of Code § 46.2-630 for a transferee who is "a dealer who holds [the vehicle] for resale and operates it only for sales purposes under a dealer's license plate." Similarly, a dealer or other person may receive an unendorsed title along with the transferor's "power of attorney . . . for the purpose

8

responsibility of the transferee, not the owner, to enter on the received certificate of title the name in which the new certificate of title will be issued. Common experience tells us that the purchaser or transferee of a motor vehicle often will desire to have the vehicle titled, either jointly or separately, in the name of another. Indeed, that is what occurred in this case when Ferrell's father purchased the Buick and had it titled in Scarborough's name. Thus, Scarborough's failure to complete the assignment of title by entering the name of the transferee on the certificate of title does not, per se, defeat the transfer of her ownership of the Buick. Accordingly, we must look to the specific circumstances in this case to determine if, and to whom, Scarborough's ownership of the Buick was transferred.

In order to effect a transfer of the ownership of a motor vehicle, two things are required: (1) the owner must actually deliver the endorsed certificate of title to the transferee, and (2) the owner must deliver possession of the vehicle to the transferee. See Nationwide Insurance Company v. Storm, 200 Va. 526, 528-29, 106 S.E.2d 588, 589-90 (1959)(holding that delivery

---

of assigning the transferor's interest." Code § 46.2-629. Accordingly, we emphasize that the views expressed in this opinion do not apply to transfers of motor vehicles to dealers or to the delivery of an unendorsed certificate of title to an attorney-in-fact.

9

of possession of vehicle without delivery of certificate of title did not transfer ownership even though full payment had been received). Although Scarborough testified that the Buick "didn't belong to" her, the record is clear that she was the sole owner of the Buick, as evidenced by the certificate of title, even though Ferrell's father had actually purchased the car and "intended to give the car to both [her] and to [his] son." Accordingly, only Scarborough could transfer ownership of the Buick. Therefore, the subsequent desire of Ferrell's father to have the Buick sold and Scarborough's acquiescence at the time he told her "she'd have to sign the title" are not relevant.

It is clear on this record that following an argument with Ferrell, Scarborough desired to leave the Ferrell household and Ferrell "had her sign the title." Scarborough knowingly signed and dated the certificate of title as the owner of the Buick, delivered the certificate of title to Ferrell, and left the Buick in his sole possession and control. In doing so, Scarborough's signature constituted the required owner's endorsement under Code § 46.2-628. Her delivery of the certificate of title to Ferrell so endorsed at the time she also left the Buick with Ferrell satisfied the further requirements of that statute. Accordingly, Scarborough effected a transfer of ownership of the Buick to Ferrell. Thereafter, it was

Ferrell's responsibility under Code § 46.2-630 to complete the blank space designed for the transferee on the certificate of title.

The evidence in the record supports the further conclusion that Ferrell fully understood that ownership of the Buick had transferred to him. Ferrell thereafter treated the Buick as his own. He drove the Buick whenever he needed to and without seeking permission to do so. Ferrell also paid property taxes and a local licensing fee on the Buick, had the vehicle inspected as required by law, and paid the inspection fee. He also attempted to maintain insurance on the vehicle by paying premiums on Scarborough's insurance policy. It is true that he failed to apply for a new certificate of title within the time period required by law; however, while this might subject him to criminal liability, the failure to apply for a new certificate of title does not void the transfer of ownership of a motor vehicle.

CONCLUSION

For these reasons, we hold that the chancellor erred in ruling that Scarborough remained the owner of the Buick because her "'gift' of the car failed because of an unspecified donee." Thus, we will reverse the chancellor's determination that Nationwide has a duty to defend Ferrell and provide coverage for any liability he might incur as a result of the accident.

11

Ferrell's ownership of the Buick moots any inquiry into Allstate's contention that the "non-owned vehicle" coverage in Ferrell's insurance policy with Atlanta Casualty would apply. Because the chancellor did not consider whether Atlanta Casualty would have a duty to defend Ferrell and provide liability coverage under his insurance policy if he were the owner of the Buick, we will remand the case for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.