## CIRCUIT COURT OF FAIRFAX COUNTY

Select Auto Imports, Inc.

 v.

Thorney Antonio Minor,
Angela L. Minor,
Government Employees Ins. Co.,
and Commercial Union Ins. Co.

 v.

Norman Minor
and Vernon Tyrell Cooper

March 1, 2002

Case No. (Law) 192096

BY JUDGE HENRY E. HUDSON

This matter is before the Court on the Plaintiff's Motion for Declaratory Judgment filed against Thorney Antonio Minor, Angela L. Minor, Government Employees Insurance Company (GEICO), and Commercial Union Insurance Company (CU). Plaintiff also seeks judgment against Thorney Antonio Minor and Angela L. Minor individually for $49,500.00 plus attorney's fees. Further, Thorney Antonio Minor and his wife, Angela L. Minor, seek judgment against Third-Party Defendants Norman Minor and Vernon Cooper for any amount awarded against Mr. and Mrs. Minor.

The dispositive facts are not in substantial dispute. Defendants Thorney "Tony" Antonio Minor and Angela L. Minor (hereinafter "the Minors"), accompanied by Mr. Minor's brother, Norman Minor, visited the Plaintiff auto dealership on January 8, 2000. The Minors were interested in purchasing a Range Rover vehicle for Norman Minor. Because Norman Minor had "no credit," Tony Minor intended to purchase the vehicle and obtain financing in his name. Once Tony Minor obtained financing, Norman Minor would reimburse him for the down payment and each monthly payment thereafter.

Tony Minor testified that he did not disclose this proposed relationship to any employee of the Plaintiff dealership. However, Tony Minor also testified that he suspected that the dealership knew the car was actually being purchased for his brother.

After test driving a 1998 Range Rover, Norman Minor and the Minors met with Julie Krenzke, a finance manager for the dealership. Tony Minor expressed an interest in purchasing the vehicle. Ms. Krenzke then presented the Minors with several documents necessary to complete the proposed transaction. Those documents included a contract of sale, a credit application, a Virginia Retail Installment Contract, two post-dated promissory notes, an application for a Maryland certificate of title, and an agreement to provide insurance.

During that meeting, Tony Minor informed Ms. Krenzke and a salesperson, Marlon Bolanos, that he was insured by GEICO. At their request, he displayed to them his expired GEICO identification card and acknowledged that he was responsible for maintaining physical damage insurance on the vehicle. Tony Minor then agreed to pay cash toward the down payment and to finance the remaining balance of the purchase price.

Krenzke explained to the Minors that the sale of the vehicle was conditioned on Tony Minor's ability to secure acceptable financing, which he intended to do through his credit union. If unsuccessful, the dealership would then attempt to locate a source of financing, subject to the approval of Mr. Minor. Krenzke also informed them that, if the dealership secured financing, then the Minors would be required to return to the dealership to execute a new contract. After the parties signed the requisite documents, Krenzke completed a temporary certificate of title and presented it to Tony Minor. Krenzke did not complete the assignment of title form because the sale was contingent on acceptable financing.

Tony Minor then presented Krenzke with a post-dated check in the amount of $17,000.00 and a promissory note in the amount of $2,500.00, collectively representing the down payment. The bank subsequently dishonored the check for insufficient funds. After presenting the check and note, Tony Minor drove the vehicle off the lot. The conditional sales agreement permitted Mr. Minor to return the vehicle if acceptable financing

could not be arranged, provided it was returned "in the condition delivered." Tony Minor testified that he was specifically advised that the temporary certificate of title he received was contingent on financing.

Although the evidence is unclear as to who drove the Range Rover off the dealership's lot, it is undisputed that Norman Minor, with his brother's permission, drove the vehicle to his home in Maryland that day. Several days later, Tony Minor called Krenzke and advised her that he was unable to obtain financing through his credit union. Krenzke indicated that she would attempt to secure financing for him, but she could not arrange financing pursuant to the terms previously discussed. Krenzke then instructed the Minors to return to the dealership to execute a new contract, which they agreed to do.

Before returning to the dealership, Norman Minor loaned the vehicle to a friend, Vernon Cooper. Cooper had expressed an interest in purchasing the Range Rover if the Minors were unable to secure financing. Accordingly, Cooper drove the vehicle to his residence to contemplate the purchase with his wife. Unfortunately, en route to his residence, Cooper was involved in a single car collision.

Norman Minor drove to the accident site to observe the damage to the vehicle. He testified that the front end appeared to be "messed up" and the grill and the crash bar were missing. During an investigative interview with a GEICO agent, Norman Minor described the front-end damage to the Range Rover as "real bad." Norman Minor was unsure "whether or not it is even gonna be worth even trying to fix it." Later at the towing company, Tony Minor observed the vehicle. He testified that the grill and bumper were dented inward, the right front fender was damaged, the hood sustained a small dent and the right rear quarter panel was damaged.

Following the accident, Tony Minor called the dealership to advise them of the collision. Chris Keller, the dealership's business manager, told Minor to report the accident to GEICO and to have the vehicle added to his policy. According to Keller's testimony, Minor agreed to do so. Keller then called GEICO, advised them of the accident, and requested that the vehicle be added to Minor's policy. GEICO declined that request, indicating that only the policyholder could take such action.

Alice M. Hinkle, underwriting sales manager for GEICO, testified that Tony Minor never attempted to add the Range Rover to his policy. In fact, Minor told the GEICO investigator that he never intended to add the vehicle to his policy. In court, Tony Minor testified that he expected his brother Norman Minor to obtain the insurance. Hinkle further testified that GEICO would not have added the Range Rover to Tony Minor's policy until the vehicle was actually titled in his name.

Mike Hajimohammad, owner of the dealership, testified that several days after learning of the accident, the damaged vehicle was returned to his lot by a tow truck. According to Hajimohammad, the damage caused the vehicle to depreciate to a "junk" value of no more than $5,000. The tow truck driver advised Hajimohammad that Tony Minor had "no interest" in the vehicle. The tow truck driver was instructed to remove the vehicle from dealership lot.

The following morning, Hajimohammad discovered the Range Rover on his lot. He arranged for the vehicle to be towed to a storage facility. Hajimohammad attempted unsuccessfully to collect for the damaged vehicle from the Minors' GEICO insurance policy and from the dealership's Commercial Union Insurance garage policy. Consequently, the dealership brought this action against both insurance carriers, as well as the Minors. The dealership seeks damages against the Minors in the amount of $49,500.00. Plaintiff further requests declaratory judgment against either GEICO or Commercial Union to determine whether their garage policy or the Minors' individual policy covers the loss. Both carriers deny liability.

Commercial Union contends that Plaintiff's garage policy covers only vehicles actually owned by the dealership. Commercial Union urges the Court to adopt the definition of ownership espoused in Va. Code § 46.2-100, rather than the traditional strict title approach. Under Va. Code § 46.2-100, the execution of a conditional sales agreement, coupled with the right of immediate possession, is sufficient to constitute ownership. Commercial Union also asserts that because the Minors were permissive users or bailees of the vehicle, the Minors' GEICO insurance policy is primary to the Commercial Union policy.

Conversely, GEICO and the Minors assert that the assignment of title was never completed and that actual title never passed to the Minors. GEICO argues that the testimony revealed that neither the plaintiff nor the Minors considered the transaction to be final. Accordingly, the Range Rover was owned by the Plaintiff dealership at the time of the accident and is therefore covered under the garage policy issued by Commercial Union. In the alternative, GEICO argues that, even if the Minors were the owners, the accident is not covered under the Minors' policy because the vehicle was not added within thirty days of acquisition. Furthermore, if the Minors were held to be legally responsible for the loss, the GEICO policy would provide only secondary coverage.

In addition to joining in the coverage argument of GEICO, the Minors contend that the Plaintiff dealership failed to prove the actual damage to the vehicle. However, if found to be liable, the Minors filed a third-party claim against Norman Minor and Vernon Cooper.

When Tony and Angela Minor executed the Virginia Retail Installment Contract (Plaintiff's Exhibit 3) and the Delivery Pending Finance Approval agreement (Plaintiff's Exhibit 7), they contractually assumed responsibility for the vehicle. The Delivery Pending Finance Approval agreement requires the purchaser to "return the vehicle in like condition" if no acceptable lending source is found. ¶ 2. The addendum to the Installment Contract obliged the Minors to "maintain the vehicle in good condition and repair," pending negotiation of the final terms of sale. Notwithstanding the issue of actual ownership, the Minors assumed the risk of damage when they took possession of the Range Rover. Accordingly, the Minors are liable for the loss incurred by Plaintiff.

The Minors argue that the Plaintiff dealership failed to prove its damages. They contend that the dealership offered no evidence as to the cost of repair or the difference in the vehicle's value before and after the accident. However, Mike Hajimohammad, the owner of the Plaintiff dealership, testified that the vehicle could not be repaired. Tony Minor concurred with this assessment in his statement to the GEICO investigator. Hajimohammad stated that the Range Rover could only be sold as junk for a value of perhaps $5,000. Admittedly, the dealership made no effort to recoup the approximately $5,000 in junk value. To that extent, the Minors have proven that the Plaintiff failed to act reasonably to mitigate damages. *See Rosenberg v. Stone*, 160 Va. 381, 386 (1933).

When the damage to a motor vehicle is a total loss, the measure of damage is the difference in value before and immediately after the accident plus the necessary and reasonable expenses incurred by the plaintiff as a result of the damage to the property. *Averett v. Shircliff*, 218 Va. 202, 207-08 (1977). While proof of an exact amount of damages is not required, the plaintiff must present sufficient facts and circumstances to permit the Court to make a reasonable estimate of its loss. *D. C. McClain, Inc, v. Arlington County*, 249 Va. 131, 143 (1995).

Applying the foregoing rules, the Court will award damages to the Plaintiff against Thorney A. "Tony" Minor and Angela L. Minor, jointly and severally, for $44,950.00.

With respect to the Minor's Motion for Third-Party Declaratory Judgment against Vernon Tyrell Cooper, who was operating the Range Rover at the time of the collision, a review of the Court's file reveals that Cooper was properly served and that no answer was filed within twenty-one days. The Minor's Motion for Default Judgment is granted. The court finds that Vernon Tyrell Cooper is liable for any judgment awarded against Thorney A. "Tony" Minor and Angela L. Minor in this case. Although the Minors' Motion seeks similar relief against Norman Minor, no mention of any such relief was argued at trial

or mentioned in the briefs. Accordingly, the Court will take no action with respect to Norman Minor at this time.

Turning next to the Plaintiff's Motion for Declaratory Judgment, the dealership seeks the Court's opinion as to which insurance policy covers the loss. The analysis begins with a determination of who owned the vehicle at the time the accident occurred. Relying on Va. Code § 46.2-100, Commercial Union Insurance Co. argues that the Minors owned the vehicle when they drove off the dealer's lot. Va. Code § 46.2-100 states that the signing of a conditional sales contract, coupled with the immediate right of possession, establishes ownership of a motor vehicle. While that statute may define ownership for some purposes, it has never been controlling in cases involving insurance coverage.

In *Allstate Ins. Co. v. Atlanta Casualty Co.*, 260 Va. 148 (2000), a declaratory judgment dispute involving insurance coverage, the Court restated that a transfer of ownership has two required elements. First, the initial owner must actually deliver the endorsed certificate of title to the transferee. Second, the initial owner must transfer possession of the vehicle to the transferee. *Id.* at 155. In the instant case, Plaintiff never delivered the endorsed certificate of title to the Minors. In fact, the evidence was clear that the dealership did not intent to complete the execution of the assignment of title until the contract of sale was final. Therefore, no final agreement could be reached until either party secured an acceptable source of financing, which never occurred. Even if the Minors had paid the full purchase price and taken possession of the Range Rover, they would not have been the legal owners without receiving the endorsed certificate of title. See *Nationwide Ins. Co. v. Storm*, 200 Va. 526, 528-29 (1959).

Contrary to the position of Commercial Union, the Temporary Certificate of Title presented to the Minors was not intended to convey ownership. As the testimony disclosed, its purpose was merely to provide evidence of the Minor's entitlement to possess the vehicle. In effect, it served as a temporary registration. *Commonwealth v. Lewis*, 28 Va. App. 164, 170-71 (1998), cited by Commercial Union, is inapposite. In *Lewis*, a criminal case, the Court held that the property interest conveyed by both delivery of possession of the vehicle to the defendant and the completion of the temporary certificate of ownership was sufficient to support a conviction for larceny by false pretense under the pertinent Virginia statute. As the Court pointed out in *Lewis*, the criminal statute did not require a transfer of absolute title. *Id.* at 168. The insurance contracts at issue in this case appear to employ the term "ownership" as denoting possession of absolute title.

286

In a case with facts remarkably similar to the immediate controversy, the U.S. District Court for the Eastern District of Virginia reached the same result. In *Field, Trustee v. Transcontinental Ins. Co.*, 219 B.R. 115, 121 (E.D. Va. 1998), the Court restricted the application of Va. Code § 46.2-100 to Title 46 of the Code of Virginia, which pertains to Motor Vehicles. Restating the traditional rule that Virginia is a strict title state, the Court specifically held that the definition of ownership contained in Va. Code § 46.2-100 did not govern insurance coverage.

The Court is therefore of the opinion that the Plaintiff retained absolute title to the Range Rover on the date of the accident. Consequently, the vehicle was arguably covered under the garage policy issued by Commercial Union. But the coverage analysis does not end at that point. The Court must determine whether the garage policy is primary.

Commercial Union contends that its coverage is secondary because the garage policy only covers non-employees to the extent that they are not covered by other insurance. This limitation is not, however, expressed in the text of the policy. Part VI(B)(1) of the garage policy, entitled "Conditions," states that "for any covered auto you own this policy provides primary insurance." Commercial Union argues that under Va. Code § 38.2-2205(A)(1), a bailee's insurance coverage is primary under a garage policy. In support of their argument, Commercial Union cites to *Aetna Casualty & Surety Co. v. National Union Fire Ins. Co.*, 233 Va. 49, 53 (1987), wherein the Court construed the predecessor of Va. Code § 38.2-2205(A)(1), Section 38.1-381(a)(3), as mandatory in application. The Court noted that such statutory provisions are "as much a part of the policy as if incorporated therein." *Id.* at 53 (citing *State Farm Mutual v. Duncan*, 203 Va. 440, 443 (1962)).

A careful reading of the operative provisions of Va. Code § 38.2-2205(A)(1) casts doubt on its application to the specific facts of this case. The second sentence of the statute limits its application to only certain types of permissive users/bailees by stating:

> such provision shall apply to motor vehicles which are either for the purpose of *demonstrating* to the other person as a prospective purchaser, or which are *loaned or leased* to the other person as a convenience *during the repairing or servicing* of a motor vehicle for the other person, or *leased* to the other person for a period of six months or more.

*See Government Employees Ins. Co. v. Universal Underwriters Ins. Co.*, 232 Va. 326, 327-28 (1986) (emphasis added).

The evidence in this case revealed that the Range Rover was not entrusted to the Minors for any of the purposes recited in the statute. Rather, the vehicle was entrusted to the Minors under a conditional sales agreement and temporary certificate of ownership. The Minors were entitled to use the Range Rover while attempting to secure financing. It was clearly neither a loan nor a lease. Moreover, the transaction had advanced far beyond the demonstration stage. Therefore, Va. Code § 38.2-2205(A)(1) does not apply to the immediate case. Moreover, unlike other garage policies encountered in reviewing reported cases involving insurance coverage controversies, the policy in this case contains no language limiting coverage of permissive users of vehicles owned by the dealership.

The Court, therefore, finds that the garage policy issued to the Plaintiff dealership by Commercial Union provided primary coverage for the losses sustained by Plaintiff.

The last issue to be resolved is whether the GEICO policy issued to the Minors covers the judgment for which they are liable in this case. GEICO denies coverage, contending that the vehicle was neither owned by the Minors nor added to the policy within thirty days of acquisition, as required by the policy. Moreover, GEICO asserts that the policy language pertaining to liability for damage to non-owned vehicles does not cover the accident in this case. Finally, even if the loss is covered, GEICO argues that the policy provides only excess coverage under the "Other Insurance" provision on page five.

On close examination, the language of Section One of the GEICO policy under "Losses We Will Pay," located on page three, appears to encompass the judgment against the Minors in this case. In pertinent part, this provision states that "we will pay damages which an insured becomes legally obligated to pay because of . . . damage to or destruction of property . . . arising out of the ownership, maintenance, or use of the owned or non-owned auto."

The Court has found the Minors liable for damage to the Range Rover, which they did not own, arising from its use. Furthermore, GEICO was timely notified of the accident by Plaintiff and conducted a thorough investigation. Although the Minors may not have initially reported the accident, they did acknowledge its occurrence to a GEICO agent.

On further reading of the GEICO policy, the Court is of the opinion that the policy provides only excess coverage under the facts of this case. Under the section entitled "Other Insurance," the second paragraph provides:

any insurance we provide for losses arising out of the ownership, maintenance, or use of a vehicle you (the insured) do not own shall be excess over any other valid and collectible insurance.

In the final analysis, the Court will award judgment for the Plaintiff, Select Auto Imports, against Thorney Antonio Minor and Angela L. Minor, jointly and severally, in the amount of $44,950. On the Third-Party Motion for Declaratory Judgment, filed by the Minors against Vernon Tyrell Cooper, the Court, having found Cooper in default, finds that Cooper is liable for any judgment against the Minors resulting from the claims in this case.

With respect to Plaintiff's Motion for Declaratory Judgment, for the foregoing reasons, the Court finds that the Commercial Union Insurance Co. garage policy provides primary coverage for Plaintiff's losses. The GEICO policy issued to the Minors provides secondary coverage for any judgment awarded against the Minors.

The Court will hear argument on Plaintiff's request for attorneys' fees on a Friday Motions Day, with appropriate notice to opposing counsel.

## Order

Pursuant to the Memorandum Opinion dated March 1, 2002, it is adjudged and ordered that judgment will be awarded for the Plaintiff, Select Auto Imports, against Defendants, Thorney and Angela Minor, jointly and severally, in the amount of $44,950.00.

It is further ordered that the Defendants' Third-Party Motion for Declaratory Judgment against Vernon Cooper is granted.

It is therefore ordered that Cooper is in default and liable for any judgment against the Defendants resulting from the claims in this case.

It is further ordered that Plaintiff's Commercial Union Co. garage policy provides primary coverage for Plaintiff's losses and the Defendants' GEICO policy provides secondary coverage for any judgment awarded against the Defendants.