14741

MANSHIP v. NEWSOME

(198 S. E., 428)

*Messrs. Samuel Want* and *J. M. Lynch,* for appellant,

*Mr. D. Carl Cook,* for respondent,

August 19, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Action in claim and delivery brought for the purpose of effectuating an attempted rescission on the part of the appellant (plaintiff) of a transaction whereby the appellant had exchanged two mules owned by him for two mules owned by the respondent.

The issues between the parties relate to the alleged unsoundness of one of the mules received by the appellant in this exchange, and to the statements, acts, and transactions of the parties respecting the alleged attempted rescission of the exchange. The appellant in this action seeks to recover the two mules which he delivered to the respondent. One of the two mules received by the appellant died during the negotiations and transactions between the parties after the exchange was effected.

At the close of the testimony of both parties, the Court granted a motion on the part of the respondent for a direction of verdict in favor of respondent on the ground that appellant failed to prove title to the property; that appellant's remedy was a suit for damages for breach of contract.

This case borders on the unique, in that a verdict was entered by direction of the Court on a question of law which arose during the trial rather than the lack of evidence tending to establish the allegations of the complaint. The appeal

presents in the main but one question: "Is Claim and Delivery Action maintainable by one having right to rescind, for fraud, transfer of chattels made to another?"

The testimony on behalf of appellant tended to prove, stated as briefly as possible, the following facts:

On January 18, 1936, appellant was the owner of a pair of mules of about the same size, and came in contact with respondent, the owner of a larger pair of mules standing hitched to a wagon. Respondent bantered appellant for a trade of the pair of mules, resulting in an exchange between them of the pairs of mules, the details of the consideration for the transfer being unnecessary to here set out. The mules were traded in pairs for the reason that a big and little mule don't work well in double harness, but should be of similar size. Appellant did not see the mules traded him driven, but relied upon the statement of respondent that there was nothing the matter with the mules, "Not a thing. I have been working them on my farm and they are as sound as a dollar."

Appellant owns a farm about six miles from Hartsville, S. C., the place where the trade took place, and his mules (the pair being traded), known to respondent, were at this farm. After the trade was agreed upon, respondent requested appellant to bring in his pair of mules as quick as he could as he (respondent) was in a hurry to go home. Within two hours an exchange of the pairs of mules was effected, the pair of mules which had been owned by respondent being driven to appellant's farm by Graham Kelley, a share-cropper on the farm of appellant. On either the next day or the day after, by reason of information which came to him with refernce to one of the mules, appellant sent them to Hartsville and had respondent see them driven—one of the mules was quite lame. At that time respondent offered to swap back one mule, but appellant took the position that they had traded in pairs, and the exchange should be in pairs. The discussion with reference to rescinding the trade continued from "hour to hour for a day or two," and finally respondent agreed to take the mules back and call off the trade. This was on Wed-

nesday, but on account of frozen snow being on the ground, appellant could not bring the pair of mules which had been delivered to him by respondent from his farm until Saturday. Pending the controversy between the parties with reference to rescinding the trade, appellant had carried the mules he had received from respondent back to his farm. Within a short distance from the starting point when the mules were being returned to respondent, the lame mule dropped dead, which prevented the redelivery of the pair of mules to 're-spondent, and the completed rescission of the contract. Re-spondent then refused to accept the remaining live mule of the pair and return appellant the pair of smaller mules which had been delivered to him in the trade.

The lame mule traded appellant by respondent suffered from "ringbone," an incurable disease or ailment, according to Dr. Lawhorne, a veterinarian who had treated the mule prior to its acquisition by respondent, and there is testimony from which a reasonable inference could be drawn that re-spondent knew that this mule was so afflicted at the time of the trade with appellant when he represented the mule as "sound as a dollar." The mule did not die from "ringbone", an autopsy disclosing that the immediate cause of its death was "gastroenteritis, inflammation of the intestines," for which condition "there are probably a hundred different causes."

It is unnecessary that we set forth the respondent's testi-mony, since the appeal involves only the question whether there was sufficient testimony to take the case to the jury on the issues made by the pleadings. And for the further reason that it is not the position of respondent that under the situation as disclosed by appellant's testimony, if the jury believed it, appellant would not have the right to rescind the whole transaction, but that the agreement to rescind was a new agreement, the terms of which had not been complied with by appellant by a delivery of the pair of mules alive which he had received from respondent.

Appellant's counsel. has so succinctly and clearly stated

the difference between the parties-litigants, that we adopt his statement, which follows:

"The difference between the parties on this point is as significant as it is clear: appellant contends that his demand for a rescission of the transaction was finally conceded; this involves a recognition on his part that he must do whatever the law requires, in order to consummate the rescission.

"The respondent, on the other hand, denies that there was any rescission in this sense; insisting that he declined to rescind upon appellant's demand, respondent says that a new contract was made, and that this contract required the actual redelivery by each of the parties of the two mules, and that this contract has never been complied with.

"Respondent makes the further contention, in the same connection, that if the viewpoint of the appellant is correct, still the appellant cannot recover in this action, because he did not have the title and right to possession of the mules, these being essential prerequisites to the maintenance of an action in claim and delivery."

We are not here dealing with the rights of a third party, and therefore the cardinal question is: Did respondent obtain title absolute in the pair of mules delivered him by appellant under the circumstances as hereinabove related, and should it not have been submitted to a jury to determine if respondent came into the possession of the mules by misrepresentation and fraud?

Proof of title, or right of possession, is a prerequisite to a plaintiff prevailing in an action in Claim and Delivery. In this case the right of possession was bottomed entirely upon ownership; and if appellant was entitled to a rescission of the contract, then of course he was the owner of the property. "Ordinarily, upon rescission, the title to the property is reinvested in the seller, and he has a right to the possession and a return thereof." 55 C. J., 296.

As we view this case, the appellant having tendered back the property which he had delivered to respondent promptly upon learning that the pair of mules he

had received, or one of them, was not as represented and warranted, and that this fact was known to respondent at the time of the trade, and having kept the tender open, cannot be penalized because of respondent's failure to sooner agree to a rescission. Appellant's right to a rescission is dependent upon the facts as they existed when the trade was made, provided appellant acted promptly by offering a return of the consideration received upon learning of any misrepresentation made to, and fraud practiced upon him. There was no new agreement. The respondent merely acceded to the demand of appellant that there be a rescission of the first agreement, and necessarily appellant had to tender a return of the pair of mules received from respondent, and if possible, return the mules.

Fraud, if proved, vitiates all contracts and agreements, if the party defrauded elects to so treat the matter, and where there has been actual fraud mixed with deceit and corruption in an exchange of personalty, the party defrauded has his election to sue on the warranty or bring his action for the property sold or exchanged by him.

"Whether the plaintiff's remedy was in trover, or for breach of the warranty, depended on the question as to whether there had been any fraud by the defendant. If there was a mere warranty, title passed. A breach did not void the sale. If there was a fraudulent representation which induced the plaintiff to act to his injury, no title passed, and he could sue in trover. The evidence was conflicting, but that for the plaintiff was sufficient to sustain the verdict." *Johnson v. Harley,* 121 Ga., 83, 48 S. E., 685.

"It is generally held that a person who by fraud induces an exchange acquires title to the property received by him subject to be divested by a rescission of the contract by the defrauded party; but it has been held that in such case title does not pass, unless the fraud is merely constructive. The fact that there is a breach of warranty in respect to the property does not prevent the passing of title." 23 C. J., 208-9.

"An exchange procured by fraud involving real or personal property is not void, but voidable at the election of the defrauded party. The guilty party is not entitled to take advantage of the fraud and can acquire no right or interest by virtue of it." 23 C. J., 201.

"No title to the goods sold passes by a sale which is invalid because of illegality, and the rule has also been laid down in many cases that, if the sale is procured by fraud, no title passes to the buyer as against the seller, unless the seller in some way subsequently ratifies the sale; but in other cases it is held that the title passes to the fraudulent buyer, subject, however, to be divested upon a rescission by the seller, unless the property has passed into the hands of a *bona fide* purchaser." 55 C. J., 536.

In *Southern Iron & Equipment Co. v. Ry. Co.*, 151 S. C., 506, 149 S. E., 271, quoting with approval from *Carter v. Walker*, 2 Rich., 40, and *Kauffman Milling Co. v. Stuckey*, 40 S. C., 110, 18 S. E., 218: "In this State, the purchaser of a chattel may, by tender back, rescind the contract, without the consent of the seller, in the following cases: 1st. Where the right to return the property was a part of the original contract. 2nd. Where there has been fraud; and 3rd. Where there has been an entire failure of consideration." (Page 280.)

And again in the same case, there is quoted with approval from 35 Cyc., 158, the following: "A rescission, whether by agreement or *in invitum*, terminates all the rights of the parties under the original contract and they cannot be revived except by the assent of both parties. The title to the goods is revested in the seller, and he cannot maintain an action for the price."

In principle, the case of *Gore v. Johnson*, 87 S. C., 340, 69 S. E., 603, is applicable to this case. In that case the plaintiff, as a matter of contract, had the right to rescind the trade as the mule delivered him in exchange was not sound, as represented. He tendered the unsound mule back to the defendant and demanded a return of his mule which he had

delivered defendant in exchange. This demand being re-
fused, the plaintiff brought an action in claim and delivery.
The lower Court sustained a demurrer to the complaint, but
on appeal this ruling was reversed.

In the case at bar, if the jury found that fraud had been
practiced by respondent in procuring an exchange of the
pairs of mules, then as a matter of law, appellant had the
right to rescind the trade, and title to the mules delivered to
respondent by appellant did not pass into respondent, but
remained in appellant if he so elected, which he did.

The case of *Kirven v. Pinckney,* 47 S. C., 229, 25 S. E.,
202, discussed in the briefs of litigants, is of no assistance
in reaching a solution of the questions before the Court in
the case here being discussed. In that case the exchange
was incomplete, and the agreement to make the exchange
was breached. Further, the animal had passed into the
hands of a third party.

Promptly upon learning that one of the mules was lame
and was afflicted with "ringbone", an incurable disease, the
appellant tendered the pair of mules he had received from
respondent back to him and demanded a return of the pair
of mules he had delivered to respondent in the trade and ex-
change. The tender was kept open, and it is merely incidental
that one of the mules died following respondent's acceding
to the demands of appellant that the trade be rescinded.

There was testimony sufficient to require the submis-
sion to the jury, broadly speaking, the issue of title
to the mules for which claim and delivery had been
brought. That is, there was testimony tending to prove that
one of the mules delivered appellant was unsound, and that
this unsoundness was known to respondent at the time the
trade was made and he represented the mule as being sound,
and thereby induced appellant to part with his pair of mules.
If the jury found favorably to the above contention of ap-
pellant, then title to the mules delivered by appellant to re-
spondent did not pass to respondent, and was therefore in
appellant.

For the reasons above stated, it was error to grant the motion for a directed verdict, and to refuse the motion for a new trial.

The judgment is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.