0247

James W. BANNON and Sally S. Bannon, Respondents, v. Donald R. KNAUSS, Appellant.

(320 S. E. (2d) 470)

Court of Appeals

*James M. Herring* and *Curtis L. Coltrane, Herring & Meyer,* Hilton Head Island, *for appellant.*

*Frank H. Clabaugh, Dowling, Sanders, Dukes, Novit & Svalina,* Hilton Head Island, *for respondents.*

Heard Feb. 22, 1984.

Decided Sept. 4, 1984.

BELL, Judge:

This is an action for damages for breach of a contract to purchase real estate. The sellers, James and Sally Bannon, sued the purchaser, Donald Knauss. The trial resulted in a jury verdict of $17,300 for the Bannons. Knauss appeals. We affirm.

The Bannons owned an unimproved ocean front lot in Sea Pines Plantation on Hilton Head Island. On April 25, 1980, Knauss executed a written offer on a standard form real estate contract offering to purchase the lot for $330,000. The lot was one of the few remaining ocean front lots in Sea Pines and was apparently the only one on the market at that time. Knauss left the written offer and his check for $1,500 earnest money with the real estate agent who had listed the property. The offer was presented to the Bannons. They accepted it in writing on May 7, 1980.

The contract called for a closing date of December 30, 1980. In early June, Knauss decided not to consummate the purchase. He did not pay the next deposit of $23,500, which was due on June 1st. Instead, he notified the Bannons that he would not perform and was forfeiting his $1,500 deposit as provided in the contract.

The Bannons thereupon sued Knauss for specific performance of the contract. They amended their complaint to seek damages after they sold the property on December 1, 1980, to another purchaser for $310,000.

The trial judge directed a verdict for the Bannons on the issue of liability, but submitted the issue of damages to the jury. The verdict of $17,300 represented the difference between the contract of $330,000 and the resale price of $310,000 less the $1,500 deposit and a $1,200 savings on the real estate agent's commission as a result of the difference in the sales price.

## I.

Knauss first contends the issue of damages should not have gone to the jury because the contract limited the seller's

remedy for breach to retention of the deposit money. He relies on the following clause in the contract:

> If Purchaser fails to fully perform his obligation hereunder, he shall forfeit the earnest money deposit, which shall be divided equally between the Seller and [the realtor], provided, however, that the amount to be received by [the realtor] shall not exceed the amount of the commission it would have earned had this sale been completed.

In Knauss's view, this clause provided the sole remedy for a purchaser's breach of the contract.

In the absence of clear language in the contract to the contrary, a nonbreaching party may normally elect either to pursue a remedy specified in the contract or to sue for any other remedy available for the breach. The presence of a liquidated damages clause in a contract does not in itself limit the remedies available to the nonbreaching party. *Rubinstein v. Rubinstein*, 23 N. Y. (2d) 293, 296 N. Y. S.(2d) 354, 244 N. E. (2d) 49 (1968); *Fletcher v. United States*, 303 F. Supp. 583 (N. D. Ind. 1967), aff'd, 436 F. (2d) 413 (7th Cir. 1971). However, the parties may agree that the liquidated damages specified in the contract are the sole remedy by breach. *Cooley v. Call*, 61 Utah 203, 211 P. 977 (1922). If such a limitation is reasonable in the circumstances, the courts will enforce it. *Id;* *Curran v. Williams*, 352 Mich. 278, 89 N. W. (2d) 602 (1958); *cf.,* *Tate v. LeMaster*, 231 S. C. 429, 99 S. E. (2d) 39 (1957); *Owens v. Hodges*, 26 S.C.L. (1 McMul.) 106 (1841).

In a contract for sale of real estate, a clause of providing forfeiture of the earnest money if the purchaser defaults is ordinarily construed as giving the seller the election to disaffirm the contract and retain the earnest money or to affirm it and sue for the purchase price. *First Trust & Savings Bank v. Pruitt, et al.*, 121 S. C. 484, 113 S. E. 469 (1922); *Stewart v. Griffith*, 217 U. S. 323, 30 S. Ct. 528, 54 L. Ed. 782 (1910); *Biscayne Shores Inc., to Use of New Biscayne Shores Co. v. Cook*, 67 F. (2d) 144 ((3d) Cir. 1933). If the seller affirms the contract and sues for damages, the earnest money becomes a fund out of which damages may be partially paid if the proven damages exceed the amount of the earnest money. *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227, 227 S. E. (2d) 340 (1976).

We find no language in the Bannon's contract which makes retention of the earnest money the seller's exclusive remedy. Nothing suggests the parties intended the forfeiture clause to limit the purchaser's liability for breach. On the contrary, the clause appears to be included for the benefit of the seller and the real estate agent, not the purchaser. We, therefore, see no reason to depart from the ordinary construction given to such clauses.

Knauss claims he understood the forfeiture clause to limit his liability for breach to the amount of the deposit. Interpretation of the contract is governed by the objective manifestation of the parties' assent at the time the contract was made. *Blakely v. Rabon*, 266 S. C. 68, 221 S. E. (2d) 767 (1976). It does not depend on the subjective, after the fact meaning one party assigns to it.

Accordingly, the Bannons were entitled to sue for damages and the circuit judge properly submitted the issue of damages to the jury.

## II.

Knauss next contends the Bannons should have been nonsuited with prejudice because they failed to prove actual damage. He claims the Bannons' lot either maintained or increased its value after the contract was breached, so they lost nothing by his failure to perform.

In an action for breach of a contract to purchase real estate, general damages may be measured by the difference between the contract price and the fair market value of the property at the time of the breach. *Southeastern Land Fund, Inc. v. Real Estate World, Inc., supra; Barr v. MacGlothlin,* 176 Va. 474, 11 S. E. (2d) 617 (1940). On a motion for nonsuit, the evidence must be viewed in the light most favorable to the plaintiff. *Champion v. Whaley,* 280 S. C. 116, 311 S. E. (2d) 404 (S. C. App. 1984). The Bannons presented evidence which, if credited by the jury, tended to establish a fair market value of $310,000 at time of the breach. Since the contract price was $330,000, there was sufficient evidence of actual damage to survive a motion of nonsuit.

## III.

Knauss also excepts to the trial court's failure to hold, as a

matter of law, that the Bannons failed to mitigate their damages. In essence, he is complaining that the Bannons resold the property for less than $330,000. Since the evidence of value was in conflict, it was for the jury, not the court, to decide the question of failure to mitigate.

The judge instructed the jury on the seller's duty to mitigate damages. The evidence showed that $310,000 was the highest offer the Bannons received after the property was relisted. They refused a lower offer of $300,000. From the evidence, the jury could have found that $310,000 was the fair market value of the property. Thus, the jury could have concluded the property was resold at full market value. The Bannons were under no duty to continue listing the property until they received an offer equal to Knauss's; their only duty was to take reasonable steps to avoid those damages which were avoidable once the contract was breached. *Hunter v. Southern Railway Co.*, 90 S. C. 507, 73 S. E. 1017 (1912); *Rosenberg v. Stone*, 160 Va. 381, 168 S. E. 436 (1933). The evidence provided no basis for the court to hold, as a matter of law, that the Bannons unreasonably failed to mitigate damages. That question was properly submitted to the jury.

## IV.

Knauss finally excepts to the trial judge's refusal to grant a mistrial because of a failure adequately to cure an erroneous or incomplete instruction.

In his general charge to the jury, the trial judge initially instructed them that there was only one form of verdict in the case, a verdict for the plaintiff, and that the only issue for them to decide was the amount of damages. Before allowing the jury to commence deliberation, however, he recalled them and charged that his prior instruction was incomplete: they could also return a verdict for the defendant if they found the plaintiffs had failed to mitigate damages. He concluded this supplemental charge by stating. "... [Y]ou could bring in the verdict: We find for the defendant.... [O]f course, both verdicts depend[] upon your view of the case." To cure further his prior omission, he then told the jury:

> That's an error that I made and I would like for you to take that into consideration. And certainly, the fact that I had failed or forgotten to charge the other verdict, cer-

tainly doesn't mean that I have any feeling in the case because I do not have any feeling in the case. You, alone, decide the facts.

An instruction that there is only one issue for the jury to decide, when other issues or defenses exist, may be cured by the trial court and is not prejudicial when followed by an additional instruction which includes the issue previously omitted. *Ackerman v. One Mack Truck and Trailer*, 191 S. C. 74, 3 S. E. (2d) 684 (1939). Likewise, if the court commits error in some portion of the charge, it may cure the error by withdrawing the erroneous part, instructing the jury that the erroneous portion is withdrawn and should be disregarded, and giving them a correct instruction on the issue covered by the erroneous charge. *Central of Georgia Railway Co. v. Ray*, 133 Ga. 126, 65 S. E. 281 (1909).

Whether the trial judge's initial instruction in this case is regarded as erroneous or merely incomplete, we hold it was adequately cured by the additional instruction. The additional instruction informed the jury an inadvertent mistake had been made, told them to disregard the mistake, and gave them a correct charge on the omitted point. Once those steps were taken, a reasonably intelligent jury would understand they could return a defendant's verdict if they found a failure to mitigate damages. Indeed, during oral argument Knauss's counsel was unable to suggest anything more the trial judge could have done to cure the error. We, therefore, sustain the judge's refusal to grant a mistrial for failure adequately to cure the mistaken instruction.

For the foregoing reasons, we overrule Knauss's exception as having no merit. The judgment is

Affirmed.

SANDERS, C. J., and SHAW, J., concur.