580 S.E.2d 141

EDISTO ISLAND HISTORICAL PRESERVATION
SOCIETY, INC., Respondent,

v.

John GREGORY, Margaret Gregory, Mary Davis, and William
Scott, if they be alive and Richard Roe and Mary Roe, adults
whose true names are unknown and John Doe and Jane Doe,
infants, incompetents, or persons under disability or in the
military service, if any, whose true names are unknown, these
four names being fictitious names designating the unknown
heirs, devisees, distributees, issue, executors, administrators,
personal representative, successors and/or assigns of Joseph
Gregory, deceased, and also all other persons unknown claim-
ing any right, title, estate, interest in or lien upon the real
estate described in the complaint herein, Defendants,

Of whom John GREGORY and Mary Davis are Petitioners.

No. 25638.

Supreme Court of South Carolina.

Heard March 5, 2003.
Decided April 28, 2003.

Edward M. Brown, of Charleston, for petitioner John Gregory.

Hugh Davis, of Neighborhood Legal Assistance, of St. Helena Island, for petitioner Mary Davis.

Adam E. Barr and Capers G. Barr, III, both of Barr, Unger & McIntosh, L.L.C., of Charleston, for respondent.

Justice MOORE:

We granted a writ of certiorari to review the Court of Appeals' unpublished opinion affirming summary judgment in this action for specific performance. We affirm.

## FACTS

Respondent Edisto Island Historical Preservation Society (Buyer) is a nonprofit organization that operates a museum located on Edisto Island. Buyer entered into a contract for the purchase of land adjacent to the museum for $27,000. Petitioner John Gregory (John) is the personal representative of the estate of Alexander Gregory, the last record owner of

the property in question. John, his brother Joseph,[1] and three other purported heirs of Alexander signed the contract as sellers on September 13, 1995.

The contract in question is a form real estate contract. It identifies Harper Real Estate as the sellers' agent and acknowledges the realtor's receipt of $500 earnest money from Buyer. The contract provides a closing date of November 30,1995, and states:

ENCUMBRANCES AND RESTRICTIONS. Seller shall convey marketable title to Buyer, in fee simple, free from all liens, except those Buyer has agreed to assume . . . . . **If Seller is unable to convey marketable title without a court action, or incurring any unusual expense or within 30 days after herein specified closing date, Buyer or Seller has the option of terminating this contract by giving written notice to the other.** In such case, Seller shall pay Actual Cost Incurred.

(emphasis added).

No closing occurred on November 30 as provided by the contract. Nearly a year later, John sent the following letter in his capacity as personal representative. The letter is dated October 7, 1996, and is addressed to Buyer.

Ms. McCollum called me, in September of 1995, to indicate [Buyer's] interest in the purchase of the property. I advised Harper Realty of [Buyer's] interest in the purchase of the property. Mrs. Siegling, of Harper Realty, followed through and negotiated a Buyer/Seller Agreement. Mrs. Siegling, of Harper Realty, stated that she would obtain a $500.00 earnest money check, from [Buyer]. Mrs. Siegling advised me that she would send me a copy of your deposit check.

I have tried, on numerous occasions to secure a copy of your cancelled earnest money check. The South Carolina Real Estate Commission contacted Harper Realty to get a copy of your cancelled check. Harper Realty has declined to honor my request, for a copy of your earnest money check.

---

1. Petitioner Mary Davis is the heir of Joseph who died after the contract was signed.

I explained to Harper Realty and to the South Carolina Real Estate Commission that without an earnest money deposit, you were in breach of contract. . . .

The recent real estate transaction was done in good faith, on my part. However, I can no longer deny others the right to purchase the property.

Harper Realty has not maintained contact, with me, since my request for a copy of your earnest money cancelled check.

Harper Realty should have notified you, several months ago, of your breach of contract and that you no longer have the right to purchase the property.

On July 31, 1997, Buyer commenced this action for specific performance of the contract and moved for summary judgment. In response, petitioners argued the contract was terminated pursuant to the "ENCUMBRANCES AND RESTRICTIONS" provision which allows termination for failure of marketable title. Petitioners claimed title was not marketable at the time set for closing because John mistakenly deeded the property to three people who were later determined not to be legitimate heirs of Alexander.[2] Petitioners relied on John's October 7 letter as notice of termination. The master found the October 7 letter was not sufficient notice of termination because it did not relate to marketable title.

## ISSUE

Was the October 7 letter sufficient notice of termination?

## DISCUSSION

 Petitioners contend the master and the Court of Appeals erred in finding the October 7 letter insufficient as notice of termination. They argue there is no requirement that the notice of termination state the reason the contract is being terminated and that termination is not limited to marketability of title.

---

**2.** These three people, in addition to John and Joseph, signed the contract for sale. By decree issued July 2, 1997, the probate court found that only John and his brother Joseph were legitimate heirs and quieted title to the property in them.

First, under the contract the right to terminate upon notice is clearly limited to marketability of title. It is included in the "ENCUMBRANCES AND RESTRICTIONS" provision and is specifically prefaced by the phrase "if Seller is unable to convey marketable title."

Further, notice of termination must be given in accordance with the terms of the contract. *Retailers Serv. Bureau v. Smith,* 165 S.C. 238, 163 S.E. 649 (1932); *see also Zullo v. Smith,* 179 Conn. 596, 427 A.2d 409 (1980) (written notice of termination is sufficient if it specifies a reason for termination provided in the contract); *Stovall v. Publishers Paper Co.,* 284 Or. 53, 584 P.2d 1375 (1978) (notice of termination must be clear and unambiguous). Here, John's October 7 letter does not reference marketability of title, the only reason for termination upon notice as provided by the contract.[3] The letter is at best ambiguous since it charges Buyer with an alleged breach based on petitioners' difficulties with their own agent, Harper Realty.

Moreover, where the purchaser is aware of an encumbrance and is willing to purchase, title is marketable. *Ingram v. Kasey's Assocs.,* 328 S.C. 399, 493 S.E.2d 856 (Ct.App.1997); *see also Gibbs v. G.K.H., Inc.,* 311 S.C. 103, 427 S.E.2d 701 (Ct.App.1993) (marketable title is that which a reasonable purchaser, well-informed as to the facts and their legal significance, is ready and willing to accept). In view of Buyer's willingness to accept title as is, marketability cannot be asserted as a ground for termination.

We find the master and the Court of Appeals properly found the October 7 letter was not sufficient notice of termination.

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

3. Counsel agreed at oral argument there is no outstanding dispute regarding the $500 earnest money referenced in the October 7 letter.