**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

MicroClean Technology, Inc., Appellant,

v.

EnviroFix, Inc., Respondent.

Appellate Case No. 2011-193786

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Opinion No. 2013-UP-498
Heard December 12, 2012 – Filed May 22, 2013

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Terry A. Finger, of Finger & Fraser, PA, of Hilton Head Island, for Appellant.

Robert Ernest Sumner, IV, and Trudy Hartzog Robertson, both of Moore & Van Allen, PLLC, of Charleston, for Respondent.

———————

**THOMAS, J.:** Appellant MicroClean Technology, Inc. brought this action against Respondent EnviroFix, Inc. for breach of contract, claim and delivery, and

quantum meruit arising out of a dispute between the parties about the performance of two licensing agreements. EnviroFix counterclaimed for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, negligent misrepresentation, and fraudulent misrepresentation. After a bench trial, the Beaufort County Master-In-Equity issued an order in which he found EnviroFix had terminated one of the agreements and owed MicroClean only those license fees accruing during the notice period on that agreement. The Master also allowed EnviroFix to retain possession and ownership of certain items that MicroClean sought in its claim and delivery action and awarded MicroClean the security deposit paid by EnviroFix as liquidated damages for the property. Although the Master also granted MicroClean damages for breach of contract, he offset this award by a greater amount of damages granted to EnviroFix on its breach of contract counterclaim. MicroClean appeals. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

### Background

MicroSweep, a Delaware corporation with its principal place of business in Texas, is a manufacturer of certain proprietary products. In 2004, MicroSweep began to distribute the BioTower, a machine used to clean and purify the air in cars, homes, and commercial establishments.

MicroClean, a South Carolina corporation with its principal place of business in Hilton Head, is a licensor of the BioTower. Ansley Cohen and Jim Bragonier were its principals and officers during the events in question. On August 2, 2004, MicroSweep and MicroClean entered into a written distributorship agreement granting MicroClean a license to distribute the BioTowers.

EnviroFix, a North Carolina corporation with its principal place of business in Raleigh, provides cleaning services and uses MicroSweep's proprietary products. During the events in question, David Stoner was the principal of the company.

### The Parties' Agreements

On July 14, 2004, about two weeks before its agreement with MicroSweep was final, MicroClean entered into a License Agreement with EnviroFix in which EnviroFix received a non-exclusive right and license to use proprietary products manufactured by MicroSweep in certain geographic locations for six years.

Under Section 3 of the License Agreement, EnviroFix was to pay to MicroClean a territory fee of $25,000 when the parties signed the Agreement. Thereafter, for a six-year term, EnviroFix was to pay MicroClean a monthly license fee for the use of four BioTowers provided by MicroClean. The license fee was $1,000 per month and due on the first day of each month for the first twelve months. After that time, the fee was to increase to $1,250 per month. The parties further agreed "the License Fee for the BioTowers shall be due on each machine for no more than six years after delivery, and once License fees have been made for six years[,] ownership of such BioTower will be deemed transferred to [EnviroFix], with no further payment being due for such machine."

Section 3 also provided that during the six-year term, MicroClean would "have the responsibility for maintenance and repairs on the Proprietary Products, except to the extent that any such repairs are necessitated by the neglect or wrongful actions of [EnviroFix], in which case [EnviroFix] was to make the repairs at its own cost." Furthermore, during any period that a proprietary product was under repair by MicroClean and the repair was not necessitated by neglect or wrongful actions attributable to EnviroFix, MicroClean was to waive the monthly license fee and provide a substitute product if one was available.

Pursuant to Section 4, EnviroFix paid a security deposit of $15,000 for the four BioTowers when the parties executed the agreement. This deposit "was to be returned at the end of the six year term, provided [EnviroFix] has been in full compliance with all terms hereof."

Section 7(c) of the License Agreement addressed the issue of late payments and provided that "[EnviroFix] will promptly pay to [MicroClean] the Monthly License Fee. Any payment not received by the tenth day of any month will bear a late fee of $100, and will thereafter bear interest at an annual rate of 18%."

Several sections of the License Agreement addressed the parties' rights and obligations in the event the agreement was to be terminated.

Section 2 gave EnviroFix the right to terminate the agreement without cause, provided it gave "60 days advance written notice of its desire to terminate this Agreement, unless this Agreement shall have been sooner terminated by [MicroClean] as a result of breach hereof by [EnviroFix]."

Under Section 9, MicroClean had the right at its election to declare the License Agreement "immediately terminated" in the event of noncompliance by EnviroFix

with any provision in the agreement and EnviroFix's failure to cure the breach within twenty days following written notice of the breach.

Under Section 10, upon termination or expiration of the License Agreement, MicroClean was to take possession of all proprietary products that were provided to EnviroFix for less than six years. EnviroFix was to "fully cooperate with [MicroClean] in the delivery of all such Proprietary Products used by [EnviroFix], which delivery shall be at the expense of [MicroClean]." The parties further agreed that MicroClean "shall have the right to pick up such items without having to resort to legal process of any kind." EnviroFix had the right to request that MicroClean purchase any equipment licensed for the full six-year term at fair market value. This value was to be determined by an accountant or other financial professional regularly employed by MicroClean; however, EnviroFix had the right to have its own financial professional value the equipment as well. If the parties disagreed on the fair market value, they were to have this determination made by an independent appraiser.

Section 12 provided that "[a]ll notices, requests, demands, tenders and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given if hand delivered, if sent by reputable overnight delivery service, or if mailed, by certified mail, return receipt requested, postage prepaid." Section 12 also gave specific addresses for both MicroClean and EnviroFix. In addition to a post office box address for MicroClean, Section 12 also gave MicroClean's street address for notices sent by overnight delivery.

On May 9, 2005, the parties executed a second document, entitled "Equipment Schedule," whereby EnviroFix obtained two additional BioTowers from MicroClean at a total cost of $7,000 plus monthly payments of $373. The monthly payments were due on the tenth day of each month from July 10, 2005, until July 10, 2008. Upon receipt of the thirty-sixth monthly payment, ownership of these two BioTowers would be deeded to EnviroFix. The Equipment Schedule referenced the License Agreement, stating in part: "It is agreed that as each new piece of licensed equipment is provided to [EnviroFix], the parties will sign a new copy of this page, detailing the equipment and terms and will attach same to the License Agreement, intending to incorporate the Schedule into the License Agreement."

**Events Leading to Litigation**

Although the BioTowers were effective in removing odors, EnviroFix complained the caps on the machines warped and the digital timers did not work.  MicroClean characterized the complaint about the caps as a cosmetic issue that did not impair the performance of the BioTowers; however, EnviroFix maintained the problem adversely affected consumer confidence.  Similarly, whereas MicroClean contended the timers were an optional feature that increased the convenience of the BioTowers but did not affect the actual operation of the equipment if they did not operate as expected, EnviroFix asserted proper functioning of the timers was important for safety and quality control.

On December 4, 2005, Stoner wrote a letter to MicroClean in which he expressed dissatisfaction with MicroClean's performance.  In his letter, Stoner stated he informed MicroClean as early as December 2004 about mechanical problems EnviroFix was experiencing with the BioTowers, including not only the malfunctioning of the timers and the warping of the tower caps, but also a motor fan failure.  Stoner also asserted that MicroClean: (1) failed to respond to his complaints in a timely manner; (2) never inspected or tested the BioTowers to ascertain whether they were in good working order; (3) failed to perform periodic maintenance on the machines; and (4) did no repairs or maintenance except for recent repairs made by MicroSweep on one machine.  Stoner's letter ended as follows:

> This letter references only a few of the things you have not done as provided for by the terms [of] our agreement.  Some may argue that these breeches [sic] of contract may be viewed as having already terminated our agreement.  I do not know.  I do know that due to your actions, or the lack thereof, that the spirit of the agreement has been violated and is dead.
>
> Please be advised I am not going to pay my monthly fees this month, nor will I pay any future monthly fees until my machines are repaired.  I also ask that you remit to me $13,377.00 that I have paid in monthly fees on machines that are in disrepair and requiring maintenance.  Remittance of the referenced fees and maintenance to repair my machines will enable me to consider forgiving your breech [sic] of our agreement.

Beginning in December 2005, EnviroFix did not pay the monthly fees required under the License Agreement and the Equipment Schedule.

On December 10, 2005, Cohen and Bragonier sent Stoner a letter asserting MicroClean advised MicroSweep about the problem with the warping caps soon after Stoner reported it. They also advised that MicroSweep immediately started researching the situation and changed its supplier and materials. Cohen and Bragonier also attempted to explain the changes were expensive and could not be made quickly. They also advised Cohen that the manufacturer did not require or suggest any preventive maintenance, MicroClean did not have trained technicians on staff, and the manufacturer discouraged third-party involvement. They also reminded Cohen that MicroClean did not expect the monthly license payment to be made for the number of days that a specific piece of equipment was "out of service." In closing, Cohen and Bragonier stated:

> MicroClean Technology, Inc. does not consider the agreement with EnviroFix, Inc. breached or "dead" and would again suggest that all parties take a practical approach to the solution to [the] problems. For the month of December 2005, MicroClean will extend a ten day grace period to EnviroFix before the established payment is considered late. *We would expect future payments will be made according to our agreement* and we will agree to work more closely with EnviroFix in an effort to get all future issues resolved quickly and to the satisfaction of all. (emphasis added).

In reply, Stoner sent a letter dated December 20, 2005, to MicroClean reiterating EnviroFix's position that the agreement with MicroClean was "void" and indicating that EnviroFix would consider the possibility of entering into a new agreement with MicroClean "[u]pon receipt of money from overpayment of licensing fees and return of EnviroFix's deposit."

In a letter dated January 24, 2006, Cohen acknowledged Stoner took the position that the parties' agreement was "terminated." Although Cohen indicated MicroClean was still willing to resolve the parties' differences and continue the agreement, he also notified Stoner that MicroClean intended to pick up the six BioTowers in EnviroFix's possession on February 1, 2006, and requested that Stoner let him know where to retrieve them. Cohen also advised that MicroClean

expected to receive a check to cover EnviroFix's use of the equipment through the end of January 2006.

The record on appeal does not indicate any clear response from EnviroFix to MicroClean's request to collect its equipment. Stoner testified only that "[t]hey told me they were coming up but they never showed up." In any event, it appears MicroClean did not attempt to retrieve the BioTowers on February 1, 2006, or any other time thereafter.

In March 2006, MicroSweep terminated its distributorship contract with MicroClean.[1] In its letter advising of the termination of the distributorship, MicroSweep also required that MicroClean terminate all prior agreements and commitments that it made with other resellers and distributors concerning MicroSweep equipment and services. MicroClean could continue to purchase BioTower machines from MicroSweep, but at a higher cost. Furthermore, MicroClean was still able to coordinate any repair requests from EnviroFix with MicroSweep.

**The Lawsuit**

On October 24, 2006, MicroClean filed this action for breach of contract, claim and delivery, and quantum meruit against EnviroFix, requesting $83,813 in damages under the License Agreement. MicroClean also sought an order requiring EnviroFix to return the six BioTowers that were provided under the License Agreement and Equipment Schedule. EnviroFix answered, denying the allegations in the complaint, and counterclaimed for breach of contract, breach of covenant of good faith and fair dealing, quantum meruit, negligent misrepresentation, and fraudulent misrepresentation.

The Master heard the matter on February 24, 2011, and issued an order on April 12, 2011.

As to MicroClean's breach of contract action, the Master found: (1) the parties entered into two separately enforceable contracts, namely, the License Agreement of July 14, 2004, and the Equipment Schedule dated May 9, 2005, (2) pursuant to Section 2, on December 4, 2005, EnviroFix gave a sixty-day notice of its desire to terminate the License Agreement, (3) MicroClean could not recover for breach of

---

[1] The distributorship agreement required MicroClean to buy a certain number of BioTowers from MicroSweep in a stated period. MicroSweep terminated this agreement because MicroClean was unable to meet that quota.

the License Agreement because it had been terminated by EnviroFix; however, EnviroFix owed MicroClean monthly license payments totaling $2,500 for December 2005 and January 2006, and (4) MicroClean was entitled to $11,190 for breach of the Equipment Schedule, representing thirty unremitted monthly payments. Adding the damages for breach of the Equipment Schedule to the unpaid license fees on the License Agreement, the Master awarded MicroClean $13,690.

The Master also denied MicroClean's claim for quantum meruit and EnviroFix's actions for breach of covenant of good faith and fair dealing, quantum meruit, negligent misrepresentation, and fraudulent misrepresentation. As to MicroClean's claim and delivery action, the Master found: (1) return of the BioTowers was impractical because the property was essentially a perishable item with no marketable resale value, (2) MicroClean could retain the $15,000 security deposit as liquidated damages for the four BioTowers it provided under the Licensing Agreement, and (3) upon payment of the thirty outstanding monthly payments due under the Equipment Schedule, EnviroFix could retain full possession and ownership of the remaining two BioTowers.

The Master granted EnviroFix's action for breach of contract, finding MicroClean failed to comply with the provisions in the License Agreement on maintenance and repair. Based on Stoner's testimony and written correspondence, the Master assessed the total value of the time that EnviroFix lost from mechanical failures of the BioTowers at $13,377. After subtracting this amount from $13,690, the damages awarded to MicroClean arising out of the Equipment Schedule, the Master granted MicroClean judgment of $313. MicroClean appeals.

**ISSUES ON APPEAL**

I.    Did the Master err in (1) finding that MicroClean failed to prove a breach of the License Agreement and (2) limiting MicroClean's recovery on the License Agreement to unpaid fees for the two months immediately following EnviroFix's communication of its intent to end its relationship with MicroClean?

II.    Did the Master err in resolving MicroClean's action for claim and delivery by allowing EnviroFix to retain possession of the BioTowers and allowing MicroClean to keep the security deposit as liquidated damages?

III.    Did the Master err in awarding damages to EnviroFix on its breach of contract action?

**STANDARD OF REVIEW**

The issues raised in this appeal concern only the legal claims asserted by the parties; therefore, our standard of review is that applicable for actions at law. "When reviewing an action at law, referred to a master or special referee for final judgment with direct appeal to the supreme court or the court of appeals, the appellate court's jurisdiction is limited to correcting errors of law, and the appellate court will not disturb the master or special referee's findings of fact as long as they are reasonably supported by the evidence." *Allen v. Pinnacle Healthcare Sys., LLC*, 394 S.C. 268, 272, 715 S.E.2d 362, 364 (Ct. App. 2011).

**LAW/ANALYSIS**

I.      Termination of the License Agreement

MicroClean first contends the Master erred in finding the two letters Stoner wrote in December 2005, were sufficient to satisfy the requirement in the License Agreement that EnviroFix provide sixty days' advance notice if it desired to terminate the License Agreement. In support of its position, MicroClean argues the letters did not provide sixty days' notice of termination and were not delivered in a manner designated as acceptable under the License Agreement. MicroClean also asserts EnviroFix's purported notice was ineffective to terminate the parties' agreement because EnviroFix refused to cooperate when MicroClean expressed its desire to regain possession of the BioTowers.

A.      Error Preservation

We first address EnviroFix's argument that MicroClean raised the issue of nonconformance with the notice provisions of the License Agreement for the first time on appeal and therefore has failed to preserve this issue. We hold MicroClean preserved its argument that the notice EnviroFix provided was insufficient to effectuate a termination of the License Agreement. We agree with EnviroFix that MicroClean did not preserve its argument that the manner of delivery of the notice was unacceptable, but hold that this failure does not affect the outcome of MicroClean's appeal.

1.      Sufficiency of Notice

As to MicroClean's position that the letters were ineffective in providing written notice that EnviroFix was terminating the License Agreement, we disagree with EnviroFix that MicroClean failed to raise this issue at trial. In its complaint,

MicroClean asserts that "without 60 days written notice as required by the License Agreement, [EnviroFix] unilaterally declared the Agreement void." On direct examination, when asked by MicroClean's attorney whether Stoner stated "his opinion" in the letter of December 20, 2005 that the parties' agreement was "void," Cohen answered in the affirmative. Moreover, in their letter of December 10, 2005 to Stoner, Cohen and Bragonier expressly stated that "MicroClean Technology, Inc. does not consider the agreement with EnviroFix, Inc. breached or 'dead' and would again suggest all parties take a practical approach to the solution to problems." Finally, the Master stated "[t]he Court denies [MicroClean's] cause of action for breach of the License Agreement because [EnviroFix] properly terminated the License Agreement," thus, ruling on MicroClean's argument that EnviroFix failed to provide notice of termination as required by the License Agreement. *Cf. Spence v. Wingate*, 381 S.C. 487, 489, 674 S.E.2d 169, 170 (2009) (holding that although a summary judgment order did not restate the ground on which the petitioner opposed the summary judgment motion, the ruling in the appealed order was sufficient to address that argument).

2.      Delivery of Notice

We agree with EnviroFix's argument that MicroClean failed to preserve for appeal the issue of whether the manner of delivery of Stoner's letters was sufficient to effectuate a termination of the License Agreement. The record on appeal does not include any information as to how these letters were sent to MicroClean. We further note, however, the provisions in the License Agreement governing how notices under the agreement were to be sent specify only that "[a]ll notices, requests, demands, tenders and other communications required or permitted hereunder . . . shall be *deemed* to have been duly given if hand delivered, if sent by reputable overnight delivery service, or if mailed, by certified mail, return receipt requested, postage prepaid . . . ." (emphasis added). This provision does not necessarily exclude other means of transmission as appropriate to deliver a notice of termination.

B.      Sufficiency of EnviroFix's Letters

As to the letters themselves, we agree with MicroClean they were insufficient to convey a sixty-day notice of termination according to the License Agreement. Nowhere in either letter did Stoner indicate EnviroFix was giving notice of its intent to terminate the agreement in sixty days as required by Section 2. *See Edisto Island Historical Soc'y, Inc. v. Gregory*, 354 S.C. 198, 202, 580 S.E.2d 141, 143

(2003) ("[N]otice of termination must be given in accordance with the terms of the contract.").

In his letter of December 4, 2005, Stoner advised MicroClean that he would not pay his monthly fees "until my machines are repaired." This statement evidences acknowledgment on his part that the License Agreement was still in effect. We interpret the other letter, in which Stoner asserted the agreement was "void" and expressed a willingness to enter into a new agreement only if MicroClean refunded EnviroFix's security deposit as well as certain alleged overpayments, as an intent to restore the pre-agreement status quo rather than to terminate the License Agreement in the manner specified in the agreement itself. Moreover, as the Master recognized, EnviroFix paid no monthly fees for December 2005 and January 2006, as it would have been required to do under the License Agreement if its letters constituted a notice of termination. Therefore, we reverse the Master's finding that EnviroFix properly terminated the License Agreement.

C.     Breach of Contract Action and Damages

Whether MicroClean is ultimately entitled to prevail on its breach of contract action and the amount, if any, of its damages, however, would depend on matters that the Master did not decide after ruling that EnviroFix terminated the License Agreement. These include EnviroFix's arguments concerning MicroClean's capacity to enter into and continue to honor the License Agreement and questions concerning whether MicroClean's own actions amounted to a termination of the agreement. Therefore, we remand this matter for the Master to determine on the present record whether MicroClean's right to recover for breach of contract is affected by any other issues presented at trial.[2]

II.     Claim and Delivery Action

MicroClean further argues it should have prevailed on its action for claim and delivery because the License Agreement stated it had the right to take possession of the BioTowers and other proprietary products provided to EnviroFix if the applicable contract was terminated before the expiration of the six-year term. MicroClean further argues that that it is entitled to actual and punitive damages

---

[2] EnviroFix did not challenge either the Master's finding that it breached the terms of the Equipment Schedule or the $11,690 judgment for this breach. Therefore, on remand, the Master shall revisit only the issue of damages on the License Agreement.

from EnviroFix for its refusal to surrender possession of the BioTowers as well as compensation for loss of use, depreciation, and injury to the BioTowers. We remand this matter to the Master to determine (1) whether repossession of the BioTowers by MicroClean is an appropriate remedy and (2) the amount of compensation, if any, to which MicroClean is entitled because of EnviroFix's alleged failure to relinquish the equipment.

"[An] action for claim and delivery contemplates the recovery of the specific property claimed when possible or its value when delivery is not possible." *Nat'l Bank of South Carolina v. Daniels*, 283 S.C. 438, 442, 322 S.C. 689, 692 (Ct. App. 1984). "Proof of title, or right of possession, is a prerequisite to a plaintiff prevailing in action in Claim and Delivery." *Manship v. Newsome*, 188 S.C. 6, 10, 198 S.E. 428, 430 (1938).

A determination of whether MicroClean's right to possession of the BioTowers would be contingent on when the contract is deemed "terminated." Under Section 10, upon termination or expiration of the License Agreement, MicroClean was to "take possession of all Proprietary Products provided to [EnviroFix] . . . and licensed by [MicroClean] to [EnviroFix] for less than six years." Furthermore, EnviroFix was not entitled to compensation for any BioTowers licensed by MicroClean to EnviroFix for less than six years.

If the License Agreement is found to have been terminated before the end of the six-year contract period, MicroClean may be entitled to take possession of the BioTowers without having to pay compensation to EnviroFix. On the other hand, if MicroClean is allowed to enforce payment of the monthly license fees until the end of the six-year term, it could be argued that under Section 3 of the License Agreement the BioTowers would rightfully belong to EnviroFix once it has paid all required monthly license fees, late fees, and interest, such expenses representing its costs to procure a license to use the equipment for six years. Section 10 allowed MicroClean to "take possession of all Proprietary Products . . . *licensed to* [EnviroFix] for less than six years." (emphasis added). EnviroFix was not required to retain physical possession of the equipment for any specific length of time to avoid having to surrender it to MicroClean.

We agree with MicroClean that if it is entitled to return of the BioTowers, it may also be entitled to actual and punitive damages. *See* Rule 49(c), SCRCP (allowing the finder of fact "[i]n an action for the recovery of specific personal property" to assess actual and punitive damages sustained by the prevailing party "which the prevailing party has sustained by reason of the detention or taking and withholding

of such property"); *McLean v. Godwin Props., Inc.*, 292 S.C. 518, 521, 357 S.E.2d 473, 475 (Ct. App. 1987) ("Actual and punitive damages are available in a claim and delivery action.").

Here, the Master disposed of this issue by finding the parties "agreed that $15,000.00 would serve as liquidated damages in the event that the four (4) [B]io[T]owers were not returned upon request." Liquidated damages, however, have been defined as "'damages the amount of which has been made certain and fixed either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof.'" *Dixie Bell, Inc. v. Redd*, 376 S.C. 361, 371, 656 S.E.2d 765, 770 (2007) (quoting 22 Am. Jur. 2d *Damages* § 489 (2003)). Here, other provisions in the License Agreement suggest the parties did not recognize the amount of the security deposit to be a sum that cannot be changed by proof. Notably, under Section 10, EnviroFix "ha[d] the right to request that [MicroClean] purchase the equipment at the conclusion of the contract term at "fair market value," which, if the parties could not agree on this amount, would be determined by an independent appraiser. Furthermore, neither the License Agreement nor the Equipment Schedule designate the security deposits as liquidated damages or otherwise restrict MicroClean's recovery to such deposits in the event the BioTowers were not returned. *See Bannon v. Knauss*, 282 S.C. 589, 592, 320 S.E.2d 470, 472 (1984) ("The presence of a liquidated damages clause in a contract does not in itself limit the remedies available to the nonbreaching party.").

Based on the foregoing, we remand MicroClean's claim and delivery action to the Master for further proceedings.

III.    EnviroFix's Breach of Contract Action

Finally, MicroClean takes issue with the Master's award of $13,377 to EnviroFix on its counterclaim for breach of contract. We find no error.

The Master found in favor of EnviroFix on its breach of contract action, noting that MicroClean failed to comply with those portions of the license agreement related to maintenance and repair. MicroClean asserts the repairs that EnviroFix requested concerned matters that either did not affect the actual performance of the BioTowers or were attended to promptly. In addition, MicroClean maintains (1) it did not charge EnviroFix license fees for the dates that the BioTowers were being repaired and (2) the contract term specifying it would not charge a license fee for a BioTower during any interval that the particular BioTower was under repair should

be characterized as a liquidated damages clause. We hold the record supports the Master's determination of EnviroFix's damages.

Stoner testified that his complaints reflected legitimate concerns regarding safety, consumer confidence, and quality control. He determined he was entitled to $13,377 based on the number of days for which he claimed MicroClean owed him credit for repair issues and arrived at this figure by examining the e-mails he had sent advising MicroClean about equipment failures "and figured out how many months forward that they did nothing while they were in disrepair."[3] Although Stoner conceded MicroClean made efforts to have his equipment repaired and gave him credit on several occasions when the BioTowers were being repaired, he also testified that MicroClean's representatives appeared dismissive of his concerns and that the credit they gave him did not cover the entire time the equipment was in disrepair or the time it took MicroClean to transport it to the repair site.

We therefore hold EnviroFix presented evidence at trial supporting the Master's finding that MicroClean did not give him sufficient credit for the intervals during which the BioTowers were in need of repair. Although MicroClean correctly points out that the License Agreement expressly stated it would not charge any license fee for a BioTower during the period of time in which that BioTower was "under repair by [MicroClean]," the agreement does not specify that the waiver of such fees was a liquidated damages provision or limit EnviroFix's recovery to this waiver. *See id.* ("In the absence of clear language in the contract to the contrary, a nonbreaching party may normally elect either to pursue a remedy specified in the contract or to sue for any other remedy available for breach.").

**CONCLUSION**

We reverse the Master's findings that EnviroFix terminated the License Agreement and was therefore not liable for the monthly license fees for the balance of the six-year term; however, we remand this matter to the Master to determine (1) the merit of any of the alternative defenses that EnviroFix asserted at trial, (2) the damages, if any, to which MicroClean is entitled for breach of the License Agreement, (3) which party is entitled to possession of the BioTowers, and (4) any damages to which MicroClean is entitled on its claim and delivery action. We affirm the damages award to EnviroFix on its breach of contract counterclaim and direct that this judgment shall be an offset to any damages awarded to MicroClean. Finally,

---

[3] The record does not indicate that EnviroFix claimed revenue lost because of the alleged equipment failures.

we hold the judgment of $11,690 awarded to MicroClean for EnviroFix's breach of the Equipment Schedule is a final determination.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HUFF and GEATHERS, JJ., concur.**